## THATCHER v MECK

Ohio Appeals, 6th Dist, Lucas Co

No 2755.   Decided June 4, 1934

Arthur R. Cline, Toledo, and Fritsche & Winchester, Toledo, for plaintiff.

Edward H. Ray, Toledo, and Meck & Meck, Toledo, for defendants.

## OPINION

By RICHARDS, J.

Before proceeding to take an accounting, it becomes important to determine from the evidence whether the facts are such as require or justify a court of equity in taking an accounting of the moneys received for services performed, assuming that the business was obtained during the existence of the partnership.

The chief, if not the only, amounts come from the prosecution of seven personal injury cases, all of which originated by reason of a wreck occurring on July 12, 1927, in which The Toledo & Indiana Interurban Railway Company and The Toledo, Angola & Western Railroad Company were involved. The evidence discloses that as a result of the litigation the amount of $27,500 was collected, of which the defendant received as fees one-third, amounting to $9166.66, and the plaintiff insists that on an accounting he is entitled to one-half of the latter sum. The claims of the various plaintiffs involved in that litigation were obtained through the efforts of Harry D. Stewart, who was not an attorney at law but was a touter, or what is commonly called an "ambulance chaser", and who was employed, as he testifies, on a percentage basis. He had been employed in the same capacity by Mr. Thatcher prior to the time the partnership was formed, and after the formation of the partnership he was employed by the partnership, that employment being on the same basis and for the same purpose. It appears from the evidence that more than $2500.00 was advanced to Stewart for his services in these matters. Immediately after the wreck on July 12, 1927, Stewart was on hand soliciting contracts of employment of attorneys for the injured and on behalf of those who had been killed. Dating from July 13th, he secured seven or more such contracts, all of which were taken in the name of Meck & Meck, and all of which were on a contingent fee basis.

We do not have here a case in which an attorney at law has merely asked for employment and procured employment as a result thereof, but a case in which a man not a member of the bar was employed for the purpose of securing contracts in personal injury cases which were taken on a commission basis and out of which the layman procuring the contracts was to receive a commission as pay for his services. Most assuredly, if the fees for which an accounting is sought did not some within the terms of the partnership agreement, the plaintiff cannot recover. If those fees do come within its provisions and are the direct result of illegal employment contracts, or are tainted with illegality or against the public policy of the state, then the plaintiff cannot recover. However much it may be condemned as against professional ethics for a lawyer to solicit employment such contract is not unlawful in and of itself, if reasonable and fair. But the method of procuring legal business as shown by the evidence in this case goes far beyond merely violating the principles of legal ethics and if generally practiced by members of the bar would certainly bring the bar into disrepute.

Sherwood's Treatise on Professional Ethics, 2nd Edition, p. 97, a book long recognized by the legal profession as a classic, asserts that agreements between counsel and client that compensation of the former shall depend upon final success in the law suit,—that is to say, contingent fees,—are of a very dangerous tendency. The attorney has virtually purchased an interest in the litigation and is henceforth carrying it on in effect as if he were a party.

The procuring of legal business by solicitation is condemned by Rule 27 of the Canons of Professional Ethics adopted by the American Bar Association, as well as by §2 of Rule 28 of the Rules of Practice adopted by the Supreme Court of Ohio. 122 Oh St, IXXXVI. Nevertheless it is true, as has been well said, that "the law is not a code of ideal virtues nor a guide to individual perfection, but a rule for regulating the relations of society for practical purposes."

In this case, however, there is not merely a breach of professional ethics but there is involved the question whether the conduct of the partners and the touter who, by solicitation of injured persons and the representatives of deceased persons, procured professional employment for them, was against public policy and hence unlawful.

The general principle is concisely stated in 6 O. J., 738, in the following words:

"A contract by an attorney to pay a layman a part of his fee if the layman procures the employment of the attorney by a litigant, is against public policy and void."

This is a wise and wholesome statement of the law applicable to this case and may be found in the decisions of many cases. The syllabus in Holland v Sheehan, 108 Minn., 362; 23 L.R.A., N.S., 510, reads as follows:

"A contract between a layman and a lawyer, by which the former undertakes and agrees, in consideration of a division of the fees received by the latter, to hunt up and bring to the attorney persons having causes of action against railroad companies for personal injuries, is contrary to public policy and void."

The second proposition of the syllabus is: "In such contracts, the parties are in part delicto."

In the course of the opinion in that case it is stated that neither party should be permitted, in a court of justice, to successfully assert alleged rights accruing from the iniquitous agreement.

To the same effect is the case of Alpers v Hunt, 86 Cal., 63. I cite also Maguire v Corrine, 101 U. S., 108, where a similar contract was held contrary to public policy and void. Mr. Justice Swayne in delivering the opinion of the court used the following language:

"Whether forbidden by statute or condemned by public policy, the result is the same. No legal right can spring from such a source."

The learned Justice quoted the following language from an earlier decision:
"Where the taint exists, it affects fatally, in all its parts, the entire body of the contract. In all such cases potior conditio defendentis. Where there is turpitude, the law will help neither party."

See also **16 Ohio Juris. 138.**
The money in controversy in this case is the direct fruit of the illegal contracts procured for the benefit of the parties. In this case, sitting as a court of equity, we are asked to count up the dollars thus earned and divide them between the parties which claim to be entitled thereto.

Such a function is not one imposed upon a court of equity, which will leave the parties as it finds them.

Judgment and decree for defendant.

WILLIAMS and LLOYD, JJ, concur.