## COLLACOTT REALTY, INC. v HOMUTH

Municipal Court of Cleveland

Decided Jan 9, 1939

Joseph W. Kennedy, Cleveland, for plaintiff.

Julius A. Negin, Cleveland, for defendant.

## OPINION

By WESTROPP, J.

Under date of February 2, 1938 the Collacott Realty, Inc. filed an action against John Homuth for the sum of one hundred and forty-three dollars and thirty-three cents ($143.33) as real estate commission for services rendered in connection with the renewal of the Farris Sahley lease upon property occupied by John Homuth at 13550 Lorain Avenue, to which action the defendant filed an answer in the form of a general denial, and a cross-petition alleging that on the 29th day of June, 1936 the plaintiff drew a lease for the defendant consisting of four typewritten pages and containing all the terms, covenants and agreements entered into by and between the defendant and one Farris Sahley; that the defendant paid the plaintiff corporation fifty dollars ($50) for the drafting of the said lease, and that the plaintiff corporation, through its agent, Charles M. Collacott, did practice law in such instance, although neither the plaintiff corporation nor its agent was admitted to the practice of law in the State of Ohio, and that by reason thereof defendant is entitled to recover from plaintiff the sum of fifty dollars ($50) so paid.

The evidence revealed that the Collacott Realty, Inc. is a corporation organized under the laws of the State of Ohio with its principal place of business in the Hanna Building of Cleveland, Ohio; that it is authorized and licensed to engage in real estate transactions, and employs licensed agents; that Charles M. Collacott, its president and secretary, and Madeline Davis, were licensed agents employed by the plaintiff corporation; that John Homuth was lessee of said premises located at 13550 Lorain Avenue, Cleveland, Ohio under a written lease from the owners expiring November 30, 1939; that John Homuth requested the said Collacott Realty, Inc. to lease a portion of said premises for him; that the plaintiff corporation attempted to obtain a tenant for John Homuth, but was unsuccessful; that a man by the name of Farris Sahley came into the premises of John Homuth and entered into negotiations with him for the subleasing of a portion of said premises; that said tenant was not obtained through the services of the Collacott Realty, Inc., nor were they entitled to a real estate commission therefor; that during the negotiations between John Homuth and Farris Sahley, the Collacott Realty, Inc. was approached for advice on the lease, and its agents, Charles M. Collacott

and Mrs. Davis, met with the defendant John Homuth, and Farris Sahley, and discussed and advised with them with reference to the sub-leasing of the aforementioned premises; that Charles M. Collacott, the president and agent of Collacott Realty, Inc., then drafted and dictated a four-page typewritten lease of the said premises, which he referred for approval to Mr. Kennedy, the attorney for Collacott Realty, Inc., and that later John Homuth and Mr. Sahley met with Charles M. Collacott and signed the lease. Subsequent thereto the defendant John Homuth paid the Collacott Realty, Inc., through its president, Charles M. Collacott, the sum of fifty dollars ($50) for services in the drafting and negotiating of the said lease.

The plaintiff corporation, Collacott Realty, Inc., now contends that there is due it the sum of one hundred and forty-three dollars and thirty-three cents ($143.33) as commission for the renewal of said lease. The defendant John Homuth maintains that there is nothing due to plaintiff on any renewal as the plaintiff did not obtain the tenant, but merely drew the lease, and as a special defense the defendant maintains that the Collacott Realty, Inc., through its servants and agents, in drafting the lease, practiced law; that by virtue of illegally practicing law, the plaintiff, the Collacott Realty, Inc., can not recover in this action, and that the defendant is entitled to the sum of fifty dollars ($50) paid to plaintiff as set forth in his cross-petition.

The questions of law involved in this action are:

1. In drafting this four-page lease, did the Collacott Realty, Inc., practice law?

2. In an action at law, can there be a recovery where a part of the consideration at least is the unauthorized practice of law by a corporation, and

3. Where a part of the consideration was legal and part illegal, can the plaintiff recover at law for the services legally rendered?

There is no question that the Collacott Realty, Inc., is a corporation, and that all of its actions, transactions and negotiations in this matter were performed by its duly authorized agents, namely, its president and secretary Charles M. Collacott, and its agent Mrs. Madeline Davis. The law is well-settled in Ohio ▓▓▓▓▓ that a corporation can not practice law. Was the drafting of the lease on the part of Collacott Realty, Inc. the practice of law?

This question is very definitely decided in Ohio as follows:

"The practice of law is not limited to the conduct of cases in court. It embraces the preparation of pleadings and other papers incident to actions and special proceedings and the management of such actions and proceedings on behalf of clients before judges and courts, and in addition conveyancing, the preparation of legal instruments of all kinds, and in general all advice to clients and all action taken for them in matters connected with the law." Syl. 1 The Guarantee Title & Trust Co. v Dworken et, 129 Oh St 23, 1 O.O. 313.

A real estate agent or broker can not prepare contracts, deeds, mortgages, land contracts, leases, etc., nor can ▓▓▓▓▓▓▓ he fill in appropriate blanks for these items, even when no charge is made therefor, and the only interest that the real estate broker has in consummating a deal in which he was involved as broker, as these acts constitute the practice of law.

See In the Matter of Unauthorized Practice of Law in Franklin County, Ohio, Ivan H. Gore, Appellant, 58 Oh Ap 79, 11 O.O. 495. See also the opinion of the Common Pleas Court of Franklin County in Vol. 10, Ohio Bar No. 35, issue for November 23, 1936.

See Abstract & Trust Co. et v Dworken et, 129 Oh St 23, 1 O.O. 313. The second syllabus of this case reads as follows:

"Since §8623-3, GC, precludes the formation of a corporation for the purpose of carrying on the practice of any profession, a corporation is not authorized to perform acts which constitute the practice of a profession."

In the case at bar, however, it is contended by the plaintiff that it did not practice law inasmuch as the lease which was drafted by the Collacott Realty, Inc. was submitted to its attorney Mr. Kennedy for approval before being signed by the parties to this action. It has been held in Ohio, however, that a corporation can not lawfully engage in the practice of law, nor can it do so indirectly through the employment of a qualified lawyer.

"The practice of law involves a personal relation which can not be fulfilled by a corporation, and the practice of law is confined to those who have met the prescribed requirements and have been regularly admitted to the bar." The Land Title Abstract & Trust Co. v Dworken et, 129 Oh St 23, 1 O.O. 313.

See also United Mercantile Agency v Robert Lybarger, 28 N.P. (N.S.) 319.

"Therefore, when a company through its attorney employee performs services for customers * * * requiring the exercise of legal skill, such corporation must be held to be practicing law." **Judd v Savings Bank, 133 Oh St 8, 10 O.O. 95.**

So that under the foregoing decisions, the plaintiff corporation having drawn the lease involved in this issue, was guilty of the unauthorized practice of law, and in a court of equity could have been enjoined therefrom. However, this is not an action in equity to enjoin the defendant, but is an action in law by the plaintiff to recover for services, a part of which was the illegal or unlawful practice of law. In an action in equity we would apply the doctrine of coming into court with clean hands. As this, is an action at law, however, the court must apply the doctrines "ex turpi causa non oritur actio," which means where turpitude is involved, no cause of action will lie, and "in pari delicto potior est conditio defendentis," which means a cause of action can not originate in transactions which are illegal or against public policy.

"The legal maxim that a cause of action can not originate in transactions which are illegal or against public policy expressed in the Latin phrases, 'ex turpi causa non oritur actio' and 'in pari delicto potior est conditio defendentis,' applies in equity as well as in law * * * Where it applies it supplants the clean hands maxim, renders resort thereto unnecessary, and is usually stated in lieu thereof. In reality there is a distinction between the two maxims; the equitable one appropriately enough has regard to the conduct of the party and bars him personally; the legal principle looks to the quality of the transactions upon which the cause of action is founded * * *. The principle has special application in Ohio to the denial of affirmative relief against illegal contracts, in which respect the Ohio courts have refused to follow decisions in England, and other jurisdictions, and precludes setting aside conveyances founded upon illegal considerations." **16 Ohio Jur. par. 53.**

"It is a universal principle both in law and in equity that where an agreement is founded upon a consideration illegal, immoral or against public policy, a court will leave the parties where it finds them. If executed. the court will not rescind the agreement. If executory, the court will not aid in its execution, or as stated in another case, there is no right to recover on any contract of which the consideration or obligation to be performed are **bonos mores**, forbidden by positive law or opposed to public policy. Such a contract can not be enforced in law or in equity, either directly or indirectly, even though the parties have acted under such an agreement and reaped the benefits thereof." **9 O. Jur. 160.**

"'Ex dolo malo non oritur actio,' which means no court will lend its aid to a man who founds his cause of action upon an immoral or illegal act." See **4 Oh. Ap pg. 426,** case of **Avery v Ruffin.**

"'Ex facto illicito non oritur actio,' which means that transactions contrary to sound morals or against public policy will not be enforced by courts of justice." See **McCortie v Bates et, 29 Oh St at page 422.** See also **9 O. Jur. Par. 160, page 382.**

So that with these maxims and the law as a basis, it is clear that no court will grant relief to any plaintiff where there are acts which are illegal, immoral, unlawful and contrary to public policy. Certainly in the case at bar a part of the consideration, to-wit: the drafting of the lease, was unlawful and contrary to public policy, and for that part at least there can be no recovery at law.

Where only a part of the consideration is the unlawful drawing of the lease and a part of the consideration is the lawful practice of the real estate agent, can there be a recovery for that portion which is legal?

Inasmuch as the defendant paid the plaintiff corporation for the drafting of the lease the sum of fifty dollars ($50.00), and the plaintiff corporation did do some work that was legal, can the plaintiff corporation recover the balance which the said plaintiff corporation claims for services legally rendered by it? In other words, can the plaintiff corporation fuse its illegal acts with legal acts, and thereby recover because a part of the consideration at least was legal?

It is well-settled law that where any part of the consideration is illegal the plaintiff can not recover. In the case of Trist v Child, 88 U. S. 441, the following were the facts:

Trist had a claim against the United States for his services rendered in 1848. William Trist of Guadelupe resolved to present it to Congress and ask for a payment, and he made an agreement with Louis Child that he should take cnarge of the claim

and prosecute it before Congress as his agent and attorney. As compensation Child would receive twenty-five per cent of the sum received. Child prepared a petition and presented it to Congress. Later Congress appropriated $14,559.00 to Trist, and Child later sued for services. In deciding the claim Mr. Justice Swain said:

"We have said that for professional services in this connection a just compensation may be recovered. But where they are blended and confused with those which are forbidden, the whole is a unit and indivisible. That which is bad destroys that which is good and they perish together. Services of the latter character, gratuitously rendered are not unlawful. The absence of motive to wrong is the foundation of the sanctioning. The tendency to mischief if not wanting, is greatly lessened. The taint lies in the stipulation for pay. Where that exists it affects fatally in all its parts the entire body of the contract. In such cases 'protior conditio defendentis.' Where there is turpitude the law will help neither party." Trist v Child, 88 U. S. 452.

Judge Swain later confirms the same opinion in the case of Meguire v Corwine, 101 U. S. pg. 108. See also Marshall v B. & O. R. R., 16 Howard, 314, Tool Co. v Norris, 2 Wallace 45. Coppell v Hall, 7 Wallace, 542.

In our own state the above cases were followed in the case of **Thatcher v Meck, 49 Oh Ap 92, 2 O.O. 244.**

Thatcher and Meck were both licensed and practicing attorneys in the State of Ohio, who were in partnership. They had some legitimate legal business, the balance of which consisted of ambulance chasing. The partnership broke up and Thatcher sued Meck for an accounting, seeking to recover the moneys due as a result of the litigation obtained from the ambulance chasing. The court came to the conclusion that it could grant the plaintiff no relief whatsoever. Because part of the considerations involved were illegal. **Thatcher v Meck, 49 Oh Ap 92, 2 O.O. 244.** See also 16 O. Jur., 138.

The plaintiff having rendered services which were partially legal and partially illegal, the services are so blended and confused with the whole that the court must take the action as a unit. To allow the plaintiff to practice law unlawfully, and then by blending and cloaking this action with legal services, to come into court and recover therefor would be opening the back door to practices which are not permitted through the front door. To say to the defendant in this action your only remedy is in a court of equity to enjoin plaintiff from the practice of law would virtually be permitting corporations and others to engage in unlawful practice of law and recover the benefits therefor. In other words, courts of law would be in effect saying to such offenders, your action is unlawful, but there is no remedy except in a court of equity. To allow recovery in an action such as this, in my opinion, would be defeating and making ineffective the very purpose of the statutes and the laws of Ohio.

From a review of the decisions heretofore given, this court is of the opinion that inasmuch, as the plaintiff practiced law unlawfully, and the lawful services are confused and blended with the unlawful, the plaintiff can not recover, and this court must leave said plaintiff corporation where it finds it.

As to the recovery of the defendant on his cross-petition, inasmuch as the defendant was a party to this un-lawful contract, he must be considered **"in pari delicto"**, and the court will also leave him where it finds him.

Therefore, the entry will be finding for defendant on the petition, and for plaintiff on the cross-petition, costs assessed against each.