Scott, Appellee, *v.* Cravaack, Appellant.█

[Cite as Scott v. Cravaack (1977), 53 Ohio App. 2d 248.]

(No. C-76442—Decided July 27, 1977.)

*Messrs. Beirne & Wirthlin,* and *Mr. Michael A. Fulton,* for appellee.

*Messrs. Cunningham, Heile, Kelly & Brush,* for appellant.

*Per Curiam.* This cause came on to be heard upon the appeal; the transcript of the docket, journal entries and original papers from the Court of Common Pleas of Hamilton County; and the transcript of the proceedings, the briefs and the arguments of counsel.

This is a suit for a real estate commission. Plaintiff, a real estate broker, had been given a one year selling agency contract by defendant, the appellant, to sell her motel for $90,000. After the year had passed, he continued his efforts to sell and his "for sale" sign remained on the property with defendant's acquiescence. Accompanied by defendant, he took a prospective purchaser, one Eichenhorst, through the premises and on Friday, June 14th, brought Eichenhorst's signed offer to purchase at

$80,000 to defendant. The offer included a $5,000 earnest money deposit. After discussion, the $80,000 was changed to $90,000 and defendant signed the document. That evening plaintiff reached Eichenhorst by telephone and he agreed to the $90,000 price. They arranged to meet Sunday, June 16th, for Eichenhorst to execute the written contract. On Sunday, before plaintiff had met Eichenhorst, defendant telephoned and advised plaintiff that she had changed her mind. He replied that she could not since the purchaser had already accepted. Later that morning he procured Eichenhorst's signature to the written contract.

The trial court found the purchaser was ready, willing and able to proceed with the purchase of the property in accordance with the terms which the defendant authorized the plaintiff to submit and that, accordingly, plaintiff was entitled to his commission. We affirm.

Defendant assigns as her first error that the judgment was contrary to law. She argues that at the time she withdrew her offer to sell there had not been an acceptance of the offer in writing; without a "written acceptance" there was not an enforceable contract, because of R. C. 1335.05 (Statute of Frauds); and without an enforceable contract, plaintiff had not performed and was not entitled to his commission. The contract defendant signed after the price had been raised to $90,000 (in effect a counteroffer) provided: "I agree to pay for your service a commission of six percent on said purchase price * * *." It did not specify that the commission was to be paid (a) when the broker produced a ready, willing and able buyer, (b) when a signed contract was produced, or (c) when the purchase price was paid. Under such circumstances we must look to common law principles.

In *Prencsil* v. *Golaska* (1949), 86 Ohio App. 465, 466, the court stated the general principle as follows:

"In order that a real estate broker may recover a commission from his principal for the sale of real estate, where the sale is not consummated, it is necessary that the broker procure not only a purchaser able, ready and willing

to complete the purchase, but also the execution by the proposed purchaser of an enforcible [*sic*] contract for the purchase of such realty; *or that he bring the vendor and proposed purchaser together so that the vendor may procure such a contract.* (Emphasis added.)

The issue is, therefore, what is the result when the broker procures a purchaser able, ready and willing to complete the purchase on the vendor's terms but the vendor refuses to permit the broker to bring the purchaser to him or to have the contract signed? We have found no Ohio case directly deciding this issue. We believe, however, the conclusion must be that given in the Restatement of Agency 2d 349, Section 445 (1958):

"* * * [T]he principal's promise to pay a commission becomes binding upon the production by the broker of a customer ready, able, and willing to consummate the transaction on the specified terms. This promise, although now binding, does not call for performance unless there has been a fulfillment of the further condition, either that such customer shall make a contract enforceable against him or that the conveyance shall be consummated, except that if the principal is responsible for the nonperformance of such condition, it is dispensed with and the promise to pay commission becomes unconditional."

This same conclusion is enunciated in 12 American Jurisprudence 2d 940, Brokers, Section 199:

"As a general rule, and apart from stipulations in the broker's contract to the contrary, the right to compensation on the part of a broker who has procured a person able, ready and willing to purchase the property on the terms specified by the employer is not lost by a failure of completion of the transaction because of the default of the employer or his refusal to go through with the deal."

This principle was followed in *Kaercher* v. *Schee* (1933), 189 Minn. 272, 249 N. W. 180. Paragraph three of the court's syllabus states:

"Where the broker advises the owner that he has found a purchaser who has agreed, and is ready, able and willing, to buy for the price and on the terms offered by the owner, and the owner then, without good reason or excuse, refuses

to contract or sell, his agreement with the broker is breached, and the further production of the purchaser to the owner is dispensed with."

We find this principle sound and believe it governs the situation here presented. The fact that plaintiff went ahead and obtained Eichenhorst's written acceptance of defendant's offer, while not a condition precedent to his recovery, was certainly significant evidence that Eichenhorst was ready and willing. The assignment of error is, consequently, not well taken.

Appellant assigns as the second error the admission of the testimony of a witness to the availability of financing for the prospective purchase by Eichenhorst. Both parties agree that plaintiff had a duty to prove the purchaser produced by him was able, as well as ready and willing, to purchase. This requires proof that the purchaser is able to command the necessary funds to close the deal within the time required. *Frick* v. *Baetzel* (1942), 71 Ohio App. 301; *Walton* v. *Hudson* (1947), 82 Ohio App. 330.

The witness presented by plaintiff testified that he was president of the Cincinnati Federal Savings and Loan Company, had been in the savings and loan business for forty years and that his job was to screen loans for the company. He testified as to some of the details of a loan his company had made to Eichenhorst two months after the transaction here in issue. Defendant objects to this testimony as irrelevant. The relevance of testimony is within the sound discretion of the trial court. It would appear to us that the discretion was properly exercised and that the testimony was relevant since it showed the witness's familiarity with Eichenhorst's financial situation and credit standing.

Defendant further objects to the witness being permitted to answer a hypothetical question as to whether his company would have made a loan to Eichenhorst on the property in question at the time in question. There can be no doubt from the transcript that the witness was qualified as an expert who was entitled to give an opinion. The hypothetical question included the salient facts testified

to and the exhibits which had been introduced. The witness's response that his company would have made the loan needed by Eichenhorst was based on this and the court did not err in admitting the answer.

The second assignment of error is overruled.

The judgment of the Court of Common Pleas of Hamilton County, is affirmed.

*Judgment affirmed.*

SHANNON, P. J., BETTMAN and BLACK, JJ., concur.