WHITE ET AL., APPELLEES AND CROSS-APPELLANTS, *v.* NEMASTIL ET AL., APPELLANTS AND CROSS-APPELLEES.

(No. 49040 — Decided August 19, 1985.)

*Jerome Silver* and *Mark O'Neill,* for appellees and cross-appellants.

*Brent L. English* and *William J. Hyde,* for appellants and cross-appellees.

MARKUS, P.J. Both the buyers and the sellers appeal from a judgment granting the buyers damages for breach of their residential real estate sales contract. The buyers (Roy and Sadie White) claim that the court should have (a) ordered specific performance, (b) awarded greater damages against the sellers, and (c) granted them judgment against the broker, A.J. Lewis and Associates, Inc. The sellers (James and Caro Nemastil) claim that the court should have (a) denied the buyers any relief, and (b) granted them damages against the buyers and the broker.

We hold that the trial court had sufficient evidence to find that the sellers breached the contract, and that the buyers and the broker did not. This member of the panel believes that the trial court did not abuse its discretion by granting the buyers damages instead of specific performance. The second member of the majority believes that the facts mandated specific performance. Since the majority agrees that we must remand for a redetermination of the buyers' damages, we suggest that the trial court reconsider whether to order specific performance.

1

On November 18, 1982, the buyers executed a purchase agreement whereby they offered the sellers $18,000 for a house located at 1849 East 89 Street in Cleveland, Ohio. The agreement provided that the buyers would deposit $4,000 cash in escrow and the sellers would accept a first mortgage of $14,000 at thirteen percent interest for a period of eight years.[1] The title and escrow work was to be performed by Guardian Title and Guaranty Agency, Inc. ("Guardian Title").

The purchase agreement required that all documents and funds be deposited in escrow thirty days after its acceptance. The agreement also provided that, upon acceptance, the sellers:

"* * * agree to pay A.J. Lewis & Associates, Inc. 7% commission on the purchase price of his/her property for its services as brokers in connection herewith, or $2,950.00 whichever is larger, such commission shall accrue and become payable to it upon the execution of this contract, and further agrees that the money deposited with it by purchaser shall be applied first to the payment of said commission."[2]

On November 19, 1982, the sellers signed the purchase agreement thereby accepting the offer and conditions stated in the agreement.

On December 9 and 10, the sellers and the buyers, respectively, executed escrow instructions. Thomas J. Gaydos of Guardian Title was the escrow agent responsible for the transaction. The instructions provided that the closing date would be extended as follows:

"1. If one or more of the parties to this escrow have failed to deposit on or before fifteen (15) days from and after the date hereof or the date expressly set forth in instructions, whichever is later, the funds or documents required by the terms of the instructions; or within fifteen (15) days after written notice from the Company one or more of the parties hereto have failed to deposit additional funds or documents necessary to perform the conditions and requirements of the instructions; then the non-defaulting party may, upon written demand, terminate this escrow, or the Company at its option may terminate this escrow, and all funds and documents will then be returned to the parties depositing them. Absence of written demand shall be construed as an extension of time."

Therefore, the closing date for the transaction was designated to occur no later than December 25, 1982; the absence of a written demand to terminate the escrow was deemed as an extension of time of the closing date.

Although the exact date of closing is not clear, it was stipulated that the buyers did deposit $4,000 with the broker for the purpose of deposit in escrow. In a letter dated November 23, 1982, the broker advised the escrow agent, Gaydos, that it received the $4,000 cash from the buyers as required by the purchase agreement. The broker, however, did not place this money in escrow. The broker stated that it advised the sellers that it had the $4,000 and would place the money in escrow after all the documents were placed in escrow. The sellers confirmed that the broker had informed them of this fact.

At the sellers' request, Gaydos authorized an attorney from Guardian to prepare the mortgage deed and promissory note that the buyers were to execute and deposit in escrow. On or about December 18, 1982, Gaydos mailed a

---

[1] The monthy payment by the buyers to the sellers amounted to approximately $280.23 covering a period of ninety-six consecutive months. This sum included principal, interest, taxes and insurance.

[2] Under the agreement, the real estate broker became an agent of both the sellers and the buyers. The exclusive listing agreement between the sellers and the broker set the commission at $2,500.

copy of the mortgage deed and the promissory note to both the sellers and the buyers. On December 22, 1982, the buyers executed the mortgage deed and promissory note and placed them in escrow. The sellers, however, sought to impose an additional term in the mortgage deed which was not included in the contract. On December 20, the sellers caused Gaydos to send to the buyers a proposed addendum[3] to the mortgage deed. The buyers refused to sign the addendum because they did not believe that the provisions were necessary and they were skeptical of the reasons for the sellers' action at that time. Thereafter, the sellers negotiated with the buyers' attorney regarding two "softened" versions of the proposed addendum; the final version was delivered to the buyers' attorney on or about January 2, 1983. The buyers, however, rejected it. The sellers informed both Gaydos and the broker that the addendum to the mortgage deed was absolutely necessary in order for the transaction to close. At trial, however, the sellers conceded that the refusal of the buyers to sign the addendum was not fatal to the transaction.

On January 6, 1983, the sellers delivered the following letter to Gaydos:

"Dear Mr Gaydos:

"As the purchasers have failed to deposit the necessary funds and documents to perform the conditions set forth in the purchase agreement and instructions, we would like to terminate this escrow. Please send the invoice for the sellers' costs and all remaining documents to us at the above address. Thank you."

On January 15, 1983, the sellers signed another offer to purchase the property. The offer was from Christopher Penman to purchase said property for the sum of $29,000, $11,000 more than that provided in the agreement with plaintiffs-appellees.[4] It was "contingent upon F.H.A. loan financing," which was never approved, so the sale was not completed.

On April 5, 1983, the buyers brought an action for specific performance and/or damages against the sellers and the broker. The sellers counterclaimed for breach of contract and cross-claimed against the broker for breach of its fiduciary duty. The broker cross-claimed against the sellers for its commission in securing a purchaser for the sellers' property. Trial on this matter was commenced on January 9, 1984. The trial court issued judgments on July 10, 1984 and March 25, 1985 wherein it awarded the buyers $6,974.80 damages in lieu of specific performance against the sellers on the complaint, and issued judgment in favor of the broker as to the buyers' charges in the complaint. The trial court awarded the broker $2,500 on its cross-claim against the sellers and found against the sellers on their cross-claim against the broker. Finally, the trial

---

[3] The addendum to the mortgage deed provided:

"1. Preservation and Mainenance [sic] of Property: Grantor shall keep the property in good repair and shall not commit waste or permit impairment or deterioration of the property. Grantors hereby agree that any and all repairs, remodeling, renovations or restructuring to the secured premises shall be done strictly according to applicable building code standards then prevailing in the City of Cleveland.

"2. Inspection: Grantee may make or cause to be made reasonable entries upon and inspections of the property, provided that Grantee shall give Grantor notice prior to any such inspection specifying reasonable cause therefor related to Grantee's interest in the property."

[4] See Appendix I at page 8, Defendants' Exhibit C (offer to purchase from Christopher Penman and signed by appellants-sellers).

court ordered the broker to turn over the balance of the $4,000[5] in its possession to the sellers. The buyers and the sellers appeal and they collectively assign nine errors for review by this court.[6]

The following errors are assigned by appellants-sellers and cross-appellants-buyers, respectively:

*The Sellers*

"1. The Trial Court erred in finding that the Sellers had breached the Purchase Agreement.

"2. The Trial Court erred in finding that the Buyers had not breached the purchase contract.

"3. The Trial Court's judgment for money damages against the Sellers and in favor of the Whites was against the manifest weight of the evidence and contrary to law.

"4. The Trial Court's judgment for money damages in favor of the Realtor was against the manifest weight of the evidence.

"5. The Trial Court's determination that the Sellers were not entitled to damages against both the Buyers and the Realtor was against the manifest weight of the evidence."

*The Buyers*

"*Assignment of Error Number 1*

"The Trial Court Erred In Not Ordering The Nemastils To Make Specific Performance To The Whites

"*Assignment of Error Number 2*

"The Trial Court Erred In Awarding Insufficient Damages To The Whites From The Nemastils

"*Assignment of Error Number 3*

"The Trial Court Erred In Finding A. J. Lewis & Associates Not Liable To The Whites

"*Assignment of Error Number 4*

"The Trial Court Erred in Ordering A. J. Lewis & Associates To Refund Its Overage To The Nemastils Instead Of The Whites"

The assigned errors of appellants and cross-appellants are interrelated. Therefore, it will not be necessary for this court to dispose of each assignment separately.

It should be noted initially that the purchase agreement signed by both the buyers and the sellers created a binding contract because it contained all of the essential elements of the bargain. See *Mr. Mark Corp.* v. *Rush, Inc.* (1983), 11 Ohio App. 3d 167. Once there is a valid, mutually binding contract, an action in specific performance may then be maintained. *Bretz* v. *Union Central Life Ins. Co.* (1938), 134 Ohio St. 171 [11 O.O. 587]. A party seeking specific performance, however, must show performance on his own part pursuant to the terms of the contract. *George Wiedemann Brewing Co.* v. *Maxwell* (1908), 78 Ohio St. 54.

At this juncture it is necessary to consider the performance of both the buyers and the sellers pursuant to the terms of the contract. By its express terms, the contract provided that the sellers would accept the buyers' mortgage and note for $14,000 and $4,000 cash as the purchase price for the sale of the property. The buyers were to deposit an executed mortgage and note in addition to the $4,000 cash into escrow. The sellers were to deposit an executed warranty deed to the property into escrow.

It is undisputed that the sellers placed their warranty deed into escrow.

---

[5] The trial court apparently contemplated that the broker would simply keep $2,500 of the $4,000 that it held throughout this litigation.

[6] It is inexplicable that neither the Whites nor the Nemastils requested that the trial court make findings of fact and conclusions of law pursuant to Civ. R. 52. An appellate brief is not effective if the parties are not knowledgeable regarding the reasoning of the trial court in arriving at its judgment in a complex case such as this.

It was stipulated that the buyers paid the broker $4,000 to be placed into escrow. The buyers also executed and deposited into escrow their mortgage deed and promissory note. The buyers, however, refused to sign an addendum to the mortgage deed prepared by the sellers subsequent to the execution of the purchase agreement by both parties. The sellers informed both Gaydos and the broker that they would not complete the transaction unless the addendum was signed. Nevertheless, at trial the sellers conceded that they would not have terminated the escrow on January 6, 1983, if the $4,000 cash had been placed into escrow as required by the contract, and that the failure of the Whites to sign was not fatal to the deal. Consequently, the major point of contention to the sellers was the fact that no money had been placed into escrow. The broker did not place the money into escrow because it customarily did so only after all the documents were in, and the broker was informed by the sellers that the transaction would not be completed unless the addendum was signed. Consequently, though the broker, who was originally the sellers' own agent, was admittedly in possession of the $4,000 cash which it would not release because of the sellers' own assertions, the sellers terminated the escrow on the ground that the buyers had failed to deposit the money into escrow as required by the contract.

With the evidence in this posture, it is apparent that the sellers breached the contract. The sellers instigated the problem by seeking to impose additional terms beyond the provisions of the executed contract. Because of this disagreement between the parties, the broker delayed the deposit of the $4,000 into escrow. The sellers then seized upon this failure as justification for terminating the transaction when admittedly they were aware that their agent was in possession of the money and the reasons the agent had not deposited it into escrow. Consequently, we conclude that the trial court properly found that the sellers breached the contract.

We are further persuaded that the buyers sufficiently performed their part of the bargain to obtain damages if not specific performance. In fact, the parties stipulated that the buyers "were ready, willing and able to purchase the property at all times relevant to this action." The buyers delivered the required down payment to the broker, which constituted delivery to the sellers even if the broker subsequently mishandled those funds. The broker was the agent of both parties if not the sellers' agent exclusively. The buyers delivered a sufficient promissory note and mortgage deed, even though they altered the sellers' proffered note without the sellers' consent.

The duty of a court to decree specific performance of a contract to convey real estate rests in its sound discretion. *Sternberg* v. *Bd. of Trustees* (1974), 37 Ohio St. 2d 115, 118 [66 O.O.2d 257]; *Tiffin* v. *Shawhan* (1885), 43 Ohio St. 178; *Green, Inc.* v. *Smith* (1974), 40 Ohio App. 2d 30 [69 O.O. 2d 17]. However, if a contract for the purchase of real estate is "in all respects fair and free from ambiguity * * * the court has no legal discretion to refuse its enforcement." *Tiffin, supra,* at paragraph two of the syllabus. If specific performance "would be harsh, oppressive, or inequitable in its consequences * * * the court, in the exercise of its discretion, will refuse to decree its performance * * *." *Tiffin, supra,* at paragraph three of the syllabus.

In my view, the court did not abuse that discretion, since (a) the buyers altered the sellers' proffered promissory note without the sellers' knowledge or consent, and (b) the sellers incurred substantial expense to improve and maintain the property after the transaction collapsed. The court could have found the sellers incurred those expenses in the good faith but mistaken

belief that they still preserved their interest in the property. The court could have found that the buyers were not entirely blameless in the transaction's failure. Hence, the court had sufficient basis to conclude that specific performance would be inequitable in the circumstances of this case.

The second member of the majority concludes that the trial court abused its discretion when it failed to award specific performance to the buyers. He believes that the failure to award specific performance appears to be a misapplication of the "clean hands doctrine." He reasons that (a) the sellers attempted to sell the property to others on more favorable terms before this transaction failed, (b) the sellers ultimately approved the buyers' mortgage deed and promissory note, and (c) the sellers had no justification for the improvements and maintenance expenses after they contracted with these buyers.

However, both the buyers and the sellers properly complain about the court's assessment of damages. No evidence supported the unexplained judgment for $6,974.80. The buyers were entitled to recover the highest one of three possible measures of damages: (a) their expectancy damages, (b) their reliance damages, or (c) their restitution damages. *Brown Deer Restaurant, Inc.* v. *New Market Corporation* (Mar. 28, 1985), Cuyahoga App. No. 48910, unreported. They were not entitled to recover under more than one of these three legal theories. *Id.*

As expectancy damages, the buyers could recover the value of the bargain which they lost because the sellers failed to perform. Those damages would be the difference between the value of the property on the promised date of sale and the contract price. The offer made by a replacement buyer one month later might be some evidence of the property's value if the sale terms were reasonably comparable. The buyers' anticipated earnings from a prospective business there were too speculative to support a judgment for those claimed losses.

As reliance damages, the buyers could recover any expenses they reasonably incurred in anticipation of the sale. Those damages could include their down payment and their expenditures for title insurance and fire insurance. As restitution damages, the buyers could recover compensation for any benefit they bestowed upon the sellers in connection with this transaction. Restitution damages would include the down payment, which satisfied the sellers' debt to the broker and provided the sellers with the balance. In any event, we should remand for a new trial as to the proper amount of damages. The court has found that the buyers suffered the sellers' breach, so the buyers should recover under their single most favorable theory.

With respect to the issue of real estate commission, the majority of this court concludes that pursuant to the contract the broker is entitled to recover its commission from the sellers. Decisional law of Ohio provides that:

"Where a broker procures a potential purchaser who is able, ready and willing to consummate a transaction for the sale of real estate on the specified terms of the seller, and the seller refuses to allow such purchaser to sign a sales contract, the seller is bound to pay the sales commission agreed upon." *Scott* v. *Cravaack* (1977), 53 Ohio App. 2d 248 [7 O.O.3d 302], at the syllabus.

The terms of the purchase contract obligated the sellers to pay the sales commission that was agreed upon in the exclusive listing agreement, *i.e.,* $2,500. Further, the court reasonably ruled that the broker could retain its agreed commission and pay the balance of the buyers' deposit to the sellers. The parties' contract specified that the broker could retain all funds it received to satisfy its agreed commission. Further, the court heard uncontradicted evidence

that the broker complied with the local custom by retaining the down payment until the parties deposited all documents in escrow. Thus, sufficient evidence supported the trial court's implicit finding that the broker had substantially performed its duties. Consequently, the broker is not liable to the buyers or the sellers for the sellers' cancellation of the contract.

Accordingly, the sellers' five assigned errors are overruled. The buyers' second assigned error is well-taken. The majority of this panel cannot agree whether the buyers' first assignment of error has merit, so we direct that the trial court reconsider the remedy of specific performance before addressing the correct assessment of damages. The buyers' third and fourth assigned errors are overruled. The judgment of the trial court is reversed and the action is remanded for further proceedings consistent with this opinion.

*Judgment reversed and cause remanded.*

JACKSON, J., concurs.

PRYATEL, J., dissents.

PRYATEL, J. dissenting. Respectfully, I dissent. In my judgment, not only did the sellers breach the contract by insisting that the addendum be made part of the purchase agreement (thereby varying the essential term of the contract), but the buyers as well as the real estate broker breached their respective duties.

Insofar as the buyers are concerned, the purchase agreement expressly stated that "Cash to be placed in escrow subject to delivery of deed and title guarantee * * *." In this case, the buyers failed to deposit the $4,000 down payment in escrow as required by the terms of the purchase agreement. Hence, regardless of any fault on the part of the sellers (in insisting that the addendum be made part of the contract), the buyers must also be said to have breached the contract. Furthermore, the fact that the buyers gave the $4,000 down payment to the real estate agent instead of the escrow agent does not relieve them of the duty of depositing the money with the escrow agent. Nor does the promise from the broker to the sellers that the money would be placed in escrow after all the documents were deposited in escrow relieve the buyers from failing to comply with the escrow agreement.

As to the broker, I do not believe the broker is entitled to any commission. By not depositing the $4,000 down payment into escrow as required by the escrow agreement, he made it possible for the sellers to assert the defense of the breach of contract against the buyers. In essence, the broker sought to assume the duties of the escrow agent. The broker's failure to obey the instructions of the buyers (that the money be deposited in escrow) caused the buyers to breach the contract. Consequently, the broker, as agent for the parties, violated his fiduciary duty of acting in good faith toward both the buyers and sellers and should be held accountable to the buyers for the return of $4,000.

The broker's unsupported testimony that he complied with "local custom" by retaining the down payment was no more than a self-serving declaration. Absent some supporting evidence that it was indeed the "local custom" to retain a down payment, together with a description of the parameters of this local custom, I would attach little credibility to this representation.

In summary, since the parties breached their respective duties I would leave them where the court found them except to order the broker to return the $4,000 (which he never deposited into escrow) to the buyers.

"EXHIBIT 6"

## APPENDIX I

SALES • FINANCING • MORTGAGE LOANS

Member of Cleveland Area Multiple Listing Service

# A.J. LEWIS & ASSOCIATES, INC.

1463 Warrensville Center Road — TWO CONVENIENT LOCATIONS — 3725 Lee Road
South Euclid, Ohio 44121 — Shaker Heights, Ohio 44120
291-3505 — 752-9400

**OFFER TO PURCHASE** — Date *1-15-83*

The undersigned *CHRISTOPHER PENMAN*, the PURCHASER hereby offers and agrees to buy the following described property, together with all hereditaments and appurtenances thereunto belonging, but subject to all legal highways, zoning ordinances and to all restrictions and conditions hereon now of record, situated in the _____ *City* _____ of _____ *CLEVELAND* _____, County of Cuyahoga and State of Ohio, and known as being *A SINGLE FAMILY Dwelling*

on a lot of land having frontage of about *40* feet on the *East* side of *East 89th* and described as per legal description of record with the County Recorder, and which shall prevail over the aforementioned description and further known as *1549 EAST 89th*, Ohio

for the sum of *TWENTY-NINE THOUSAND* Dollars ($ *29,000.* )

upon the following terms and conditions:

Earnest money, to apply on the purchase price, the receipt of which is hereby acknowledged, and is to be deposited with A J Lewis & Associates, Inc until transaction is completed. ........ $ *100.00*

Evidenced by a Promissory note payable to A J Lewis & Associates, the receipt of which is hereby acknowledged by A. J. Lewis & Associates. Said note to be redeemed by purchaser the next banking day and paid to A. J. Lewis Associates, Inc. ........ $ *900.00*

Cash to be placed in escrow subject to delivery of deed and title Guarantee as hereinafter provided ........ $

By the execution of a first mortgage and note in that amount against said premises as follows: To be borrowed by purchaser from a responsible lending institution or whomever will make the first mortgage as a conventional loan, FHA, or G.I. loan. If loan is disapproved, purchaser to be released from contract and money deposit, if any is to be refunded. If purchaser cancels his application, he shall be liable as herein provided. Seller agrees to furnish certification that there is no termite damage with G I. or FHA transactions only, or where tender required ........ $ *28,000.00*

Purchaser has *5* banking days to make Mortgage Loan Application

*THIS TRANSACTION IS CONTINGENT UPON FHA. LOAN FINANCING. This is a SECOND OFFER*

This property is being purchased in its present physical condition, the same having been examined by me, There have been no representations or statements concerning the condition of said premises, the value of the same, the improvements thereon, the use thereof, or anything concerning the same other than what is included in this written Offer to Purchase.

All window shades, window and door screens, storm doors, storm windows, awnings, heat regulator, gas logs, radiant heaters, electric fixtures, bathroom fixtures, landscaping, curtain and drape rods, venetian blinds, linoleum

if any, on the premises are also considered as fixtures and now shall pass with the title to the above mentioned property

Income, if any, shall be prorated as of the date deed is filed for record. All utilities to be adjusted between PURCHASER and seller directly. New insurance to be obtained by Purchaser.

Special assessments whether respread or originally assessed, if any, unless paid by the seller, and annual service assessments, if any, and General Taxes, shall be prorated to the date of filing the deed for record or the date of possession, whichever is earlier

Any special assessments whether respread or originally assessed which constitute a lien against subject premises are to be *PAID BY SELLER*

Possession of the premises to be delivered by seller to purchaser rental free *IMMEDIATELY* days from date deed is filed of record.

The SELLER shall convey said premises to PURCHASER or his nominee by good and sufficient Warranty Deed with all dower rights released warranting same free and clear of all encumbrances, except such as are hereinafter mentioned and taxes and assessments for *½* half of year 19 *82* and thereafter, also furnish and deliver with said Warranty Deed a Title Guarantee or, if it cannot be obtained, a Fee Policy of Title Insurance in the amount of the purchase price of the property, guaranteeing the record title, to and including filing of deed, to be in the condition required by the terms hereof If the property is Torrenized, SELLER shall furnish, in lieu of the foregoing, an Owner's Duplicate Certificate of Title together with a United States Court Search and Tax search. Seller to pay for the Revenue Stamps.

All papers and necessary considerations pertaining to the conveyance are to be placed in escrow by the purchaser and seller with a responsible lending institution or title company within a period of *30* days from date of final acceptance hereof, subject to any and all contingencies stated herein, and to be closed in escrow as soon as reasonably possible thereafter, however, if necessary to pay one-half the escrow fee; if G.I., seller to pay appraising, the escrow time shall be automatically extended for one such period. Each party to pay one-half of the escrow fee; if G.I., seller to pay full escrow fee. Seller is responsible for payment of any taxes due to Homstead Exemption.

This offer shall be open for acceptance for a period of *72* hours, and if not accepted, the money above mentioned paid to A. J Lewis & Associates, Inc shall be returned to the purchaser without liability on the part of A. J. Lewis & Associates, Inc to either party When this offer is accepted by the seller it shall constitute a contract for the purchase and sale of said property as herein provided, without any verbal agreements, or representation of any nature.

If any buildings or capital improvements are materially damaged or destroyed prior to the filing of the deed PURCHASER shall have the option (a) to receive the proceeds of any insurance payable in connection therewith, or (b) to terminate this agreement and to recover all funds theretofore paid Any damage requiring more than 10 days for repair will be considered material damage. If less than material damage occurs, purchaser is entitled to any insurance proceeds payable in connection therewith

If any defect of title is discovered prior to the time of closing and is not waived by the purchaser, the seller shall be entitled to a reasonable extension of time for closing, but not more than ninety (90) days from the date seller is notified of the defect, for an opportunity to remove such defect Seller authorizes escrow agent to withhold $100.00 until seller furnishes escrow agent with proof of payment of final water bill

If the purchaser fails for any reason to perform this contract at the time and in the manner herein specified, the purchaser shall be directly liable to the A J LEWIS & ASSOCIATES, INC., at its election, for the payment to it for real estate commission due to it in this transaction, and it is authorized to apply on the amount due to it as commission, any money, or note paid or delivered by purchaser to it, and to bring suit against the purchaser for the deficiency, if any. Any surplus is to become the property of seller as liquidated damages That in addition to any other element of damage which may accrue in favor of the seller, in the event of purchaser's default, seller shall notify purchaser of the cancellation of this agreement and election to proceed to collect seller's damages, or shall bring a suit for specific performance of this contract.

It is specifically understood and agreed by BOTH purchaser and seller that the A J LEWIS & ASSOCIATES, INC is acting as agent and representative of BOTH the PURCHASER and SELLER in this transaction and BOTH agree to be bound towards the payment of the real estate commission as herein stated

Purchaser hereby specifically represents that he is ready, willing, and able to carry out the offer hereinbefore made.

The parties hereto agree to save and A J Lewis & Associates, Inc its agents and employees harmless from any liability resulting from misstatements of the parties hereto, whether made intentionally or unintentionally, including quoting of contents of listing agreements.

The terms "SELLER" and "PURCHASER" as used herein, and as designated by signatures below, shall include all persons so designated and their heirs, executors, administrators, successors and assigns. Purchaser has the right to select mortgage, title, and insurance companies to be used.

Time _____ Witness *June Wickerson* Purchaser *Christopher S. Penman*

Witness _____ Address _____ Phone _____

The undersigned accepts the above offer and agrees to all the conditions stated above, and agrees to pay A J Lewis & Associates, Inc 7% commission on the purchase price of his/her property for its services as brokers in connection herewith, or $____ whichever is larger, such commission shall accrue and become payable to it upon the execution of this contract, and further agrees that the money deposited with it by purchaser shall be applied first to the payment of said commission This is a contract with

Date *JAN. 27, 198_* Time _____ Seller *James R. _____*

Address _____ Seller *_____*

Witness _____ Address _____ Phone _____

Witness *June Wickerson*

Sales Representative *June Wickerson*

FORM AJL 7/76 REV 4/77

Copies Buyer (1) Lender (1) File (2) Seller (1) Salesman (1)

DEFENDANT'S EXHIBIT — Lewis