## Ackerman, Hatcher & McInturf Realty Co., Inc. v. Snyder

*[Cite as 7 AOA 133]*

Case No. 90AP030020
*Tuscarawas County, (5th)*
*Decided October 24, 1990*

*Thomas W. Hardin, Miller & Kyler,* 405 *Chauncey Ave. N.W., P.O. Box 668, New Phila-delphia, Ohio 44663, for Plaintiff-Appellee.*

*William J. Novak and Frank D. Celebrezze,* 200 *National City-East 6th Bldg., Cleveland, Ohio 44114, for Defendant-Appellant.*

SMART, J.

This is an appeal from a summary judgment of the Court of Common Pleas of Tuscarawas County, Ohio, granted in favor of plaintiff-appellee Ackerman, Hatcher & McInturf Realty, Inc. (Realty Company) on its complaint for commission due under a contract with defendant-appellant H. I. Snyder (Snyder).

On November 19, 1986, Snyder entered into an exclusive listing agreement with the Realty Company to sell some 58 acres of property. The listing price was $250,000 cash or "at any price, terms of exchange which I or we may agree to accept." The realty company was to have the exclusive listing for one year. If the property was sold, Snyder agreed to pay the realty company a six percent commission. On April 29, 1987, Snyder sent the realty company a letter asking it to "relieve" him of the exclusive listing agreement. In August 1987, the realty company and Snyder unsuccessfully negotiated a sale of the property. Finally, the realty company secured a purchase agreement offering $250,000 cash. Snyder rejected this offer, and the realty company subsequently filed suit alleging that Snyder was obligated to pay the sales commission of $15,000. The trial court made findings of fact and conclusions of law, and held that the contract was not a unilateral contract, and that Snyder's letter of revocation was legally ineffective.

Snyder's local App. R. 4(D) statement urges that the trial court was incorrect as a matter of law in the undisputed facts.

Appellant assigns two errors to the trial court:

"ASSIGNMENT OF ERROR NO. I.
"THE TRIAL COURT ERRONEOUSLY GRANTED SUMMARY JUDGMENT IN FAVOR OF THE PLAINTIFF IN THE FACE OF DEFENDANT'S REVOCATION OF HIS AGENCY RELATIONSHIP WITH PLAINTIFF AND THE TERMINATION OF THE EXCLUSIVE LISTING AGREEMENT WHICH WAS CLEARLY A UNILATERAL CONTRACT.

"ASSIGNMENT OF ERROR NO. II.
"THE TRIAL COURT ERRONEOUSLY GRANTED SUMMARY JUDGMENT FOR PLAINTIFF IN THE FACE OF THE CLEAR AND PLAIN LANGUAGE OF THE EXCLUSIVE LISTING AGREEMENT BETWEEN PLAINTIFF AND DEFENDANT WHICH REQUESTED A OF DEFENDANT'S REAL ES-

TATE PARCEL BEFORE A COMMISSION COULD BE EARNED."

1.

Snyder first urges that this contract was unilateral, and therefore he could revoke the contract at any time prior to the realty company's performance. Snyder cites the case of *Brenner v. Spiegle* (1927), 116 Ohio St. 631.

In *Brenner*, the Supreme Court examined an oral contract between a property owner and a realtor whereby the realtor was to find a tenant for certain property. The Supreme Court found that the realty's acceptance of the unilateral contract was the doing of the act specified in the contract, that is, securing a tenant, *Brenner, supra*, at 639.

In response, the realty company cites *Bell v. Dimmerling* (1948), 149 Ohio St. 165, which held:

"A written instrument, signed by the owner of real estate and accepted by a licensed real estate agent, which provides in substance that in consideration of the agreement of the agent to use its efforts to find a purchaser for such real estate he shall have the exclusive right for a specified time to sell the same and if the same is sold during such time the owner will pay a stated commission, becomes a contract binding on the owner when the agent does in fact use its efforts to find a purchaser, and if the owner sells the property during the time specified, he is liable to the agent for the payment of the stated commission."

Syllabus by the Court.

In *Bell*, the Supreme Court analyzed a contract in which the parties specified that the consideration bargained for was that the real estate agent use his efforts to find a purchaser. The Supreme Court determined that acceptance of the contract occurred when the realtor used his efforts to locate a purchaser, not when a purchaser was actually located.

The contract here recites that Snyder grants exclusive listing in consideration of the realty company's agreement to use its efforts to find a purchaser. The trial court found, and the parties do not dispute, that the realty company did expend efforts to secure a purchaser who met the terms of the listing agreement.

We find that *Bell, supra*, controls in the instant case. The trial court did not error.

Snyder also maintains that the parties each thought that the contract was revocable, and that the intent of the parties in making the contract should control. The realty company

urges that the language of the contract is unambiguous and that the Parole Evidence Rule bars consideration of the parties' intent where the parties' integrated contract is clear. Furthermore, Snyder's April 29 letter requested the realty company release him from the contract, and the realty company assert that language indicates that Snyder knew that the realty company's consent was necessary to rescind the contract.

Although Snyder now maintains that the realty company's actions in continuing to search for a buyer after April 29, 1987 were gratuitous and in bad faith, the record is clear that both Snyder and the realty company continued to negotiate with buyers for the property. These actions cannot be called gratuitous or in bad faith if Snyder encouraged them.

The first assignment of error is overruled.

II.

Snyder next asserts that the language of the contract gives him the absolute right to determine the selling price of the land and to reject any offer reconsidered unacceptable. He further maintains that the commission is contingent upon an actual sale. He concludes that because no acceptable offer was ever tendered and no sale was ever accomplished, the realty company is not entitled to the commission.

The realty company replies that it fully performed under the contract when it secured a buyer for the property who was willing to meet the listed price. The fact that Snyder declined the offer does not deny the realty company its commission.

In support of its contention that Snyder cannot unilaterally defeat this contract by declining the offer, the realty company cites *White v. Nemanstil* (1985), 29 Ohio App.3d 1, and *Scott Cravaack* (1977), 53 Ohio App.2d 248.

The language in the listing contract supports the realty company's assertion that Snyder gave the realty company authority to sell the property either for $250,000 cash, or for some other amount which Snyder determined to be acceptable. It does not support Snyder's contention that the language gives him the absolute authority to determine whether even an offer of $250,000 is acceptable to him.

We have reviewed the applicable case law, and conclude that Snyder breached the contract, and that the commission that the realty company would have received is the appropriate

measure of damages. The second assignment of error is overruled.

For the foregoing reasons, the judgment of the court of Common Pleas of Tuscarawas County, Ohio is affirmed.

MILLIGAN, P.J., and GWIN, J., concur.