**WERTZ REALTY, INC., Appellant,**

**v.**

**PARDEN, Appellee.**

[Cite as *Wertz Realty, Inc. v. Parden* (1992), 79 Ohio App.3d 461.]

Court of Appeals of Ohio,
Montgomery County.

No. 13009.

Decided May 11, 1992.

*Walter Reynolds* and *Linda S. Holmes,* for appellant.

*Alan A. Biegel,* for appellee.

BROGAN, Judge.

The appellant, Wertz Realty, Inc., appeals from the judgment of the Kettering Municipal Court granting summary judgment in favor of the appellee, Lorina Parden.

In its sole assignment of error, Wertz Realty, Inc. ("Wertz") asserts that the trial court erred as a matter of law in granting summary judgment in favor of Parden.

The facts of the case are as follows. On March 13, 1990, Parden entered into an exclusive right to sell contract with agent Judy Hirschman of Irongate Realtors for the sale of her property located at 7400 Kings Road, Centerville, Ohio. The agreement provided that Irongate was entitled to receive a commission of seven percent if the subject property were sold during the listing period. Parden also authorized Irongate, pursuant to the agreement, to list the property in a multiple listing search and divide its commission with the buyer's broker. The property was originally listed for $127,900.

Sharon Hobbs, a realtor affiliated with Wertz, showed the property to Stephen and Elizabeth Mullins on May 20, 1990. On May 21, 1990, the Mullinses made an offer of $117,000 with certain occupancy stipulations. On May 22, 1990, Parden counteroffered with a purchase price of $124,000 and

deleted the occupancy provision. The next day, the Mullinses recountered, accepting the price of $124,000 but adding new provisions addressing occupancy, closing costs, and appliances. Parden submitted another counteroffer, accepting all the provisions but changing the occupancy date. Parden admitted in her affidavit that she initialed the new contract and gave it to Hirschman, who contacted Hobbs as to this new counteroffer.

Hobbs asserted she relayed Parden's counteroffer to the Mullinses, who accepted the new occupancy date, and subsequently notified Hirschman of the Mullinses' acceptance of the contract. That evening, Hirschman telephoned Hobbs and told her that Parden had decided not to sell her home. The contract was never delivered to either Hobbs or the Mullinses.

Wertz argues that although the Mullinses did not sign the contract, their verbal acceptance of the new terms prior to Parden's withdrawal resulted in a valid contract. Parden claims that because she changed her mind before the contract was signed by the Mullinses, no enforceable contract was formed. Parden does not claim that she withdrew the offer prior to the Mullinses' verbal acceptance.

On April 1, 1991, Wertz filed a complaint stating that it had procured ready, willing and able buyers for Parden's property and was therefore entitled to the sales commission due on the contract. On June 14, 1991, Parden filed a motion for summary judgment, which the lower court granted on July 12, 1991. Wertz filed this notice of appeal on August 12, 1991.

In its sole assignment of error, Wertz contends that the trial court erred as a matter of law in awarding summary judgment in favor of Parden.

The lower court granted summary judgment for Parden, holding that no enforceable contract existed because the Mullinses had not satisfied the Statute of Frauds requirement that all contracts for the sale of real estate must be in writing. The court further found that because the Mullinses' offer was for less than the original price provided in the listing contract, no ready, willing and able buyer had been produced in accordance with the exclusive right to sell contract.

The pertinent section of the Statute of Frauds, set forth in R.C. 1335.05, provides as follows:

"No action shall be brought * * * to charge a person * * * upon a contract or sale of lands * * * or interest in or concerning them * * * unless the agreement upon which such action is brought, *or some memorandum or note thereof, is in writing and signed by the party to be charged therewith* * * *." (Emphasis added.)

This evidentiary statute requires a signed writing to function as a reliable indicator of the existence of real estate transactions and to discourage indefinite or fraudulent claims. *North Coast Cookies, Inc. v. Sweet Temptations, Inc.* (1984), 16 Ohio App.3d 342, 348, 16 OBR 391, 397, 476 N.E.2d 388, 395; see, also, *Bauman v. Worley* (1957), 166 Ohio St. 471, 2 O.O.2d 473, 143 N.E.2d 820. The phrase "party to be charged" as used in the statute refers to "the party against whom the contract is sought to be enforced. The party to be charged in the action—that is, the defendant." Black's Law Dictionary (6 Ed.1990) 1122.

Where the terms of the brokerage contract are clear as to the nature of the performance required in order to entitle the broker to his commission, the fee will be owed upon completion of that performance. *Mahon–Evans Realty, Inc. v. Spike* (1986), 33 Ohio App.3d 268, 515 N.E.2d 953. For example, where one contracts to pay another a commission for finding a purchaser of real property, but the contract is conditioned upon the actual "closing of the property" and receipt of sufficient money from the purchaser to pay the commission, he is liable after the contract of sale is consummated and the payment made, even if a suit for specific performance is later required. *Harley E. Rouda & Co. v. Springtime Co.* (1975), 49 Ohio App.2d 49, 3 O.O.3d 116, 359 N.E.2d 450.

A broker is generally entitled to a commission where a valid contract for sale is entered into by the parties. Circumstances may vary this rule. McDermott, Ohio Real Property and Practice (4 Ed.1990) 333; *Ballard v. Thompson* (1965), 5 Ohio App.2d 92, 34 O.O.2d 197, 214 N.E.2d 102; *Century 21 v. McIntyre* (1980), 68 Ohio App.2d 126, 22 O.O.3d 141, 427 N.E.2d 534.

Appellant argues that where a broker procures a purchaser who is ready, willing and able to consummate a transaction for the sale of real estate on the specified terms of the seller, and the seller refuses to allow the purchaser to sign a sales contract, the seller is bound to pay the sales commission, citing *White v. Nemastil* (1985), 29 Ohio App.3d 1, 29 OBR 1, 503 N.E.2d 189, and *Scott v. Cravaack* (1977), 53 Ohio App.2d 248, 7 O.O.3d 302, 372 N.E.2d 1375.

The *White* case is inapposite to the facts before us. In that case, the Cuyahoga County Court of Appeals held that where a broker procures a potential purchaser who is able, ready and willing to consummate a transaction for the sale of real estate on the specified terms of the seller, and *the seller breaches the sales contract*, the seller is bound to pay the sales commission agreed upon. In the matter *sub judice* the seller (appellant) did not breach the sales contract.

In *Scott v. Cravaack*, the broker presented the seller with an offer from a prospective buyer. The seller submitted a signed counteroffer, which the

buyer accepted by telephone. Before the parties could meet to execute the written contract, the seller changed her mind about selling the property. The Hamilton County Court of Appeals affirmed the trial court's finding that the broker was entitled to his commission, stating that:

" ' * * * [T]he right to compensation on the part of a broker who has procured a person able, ready and willing to purchase the property on the terms specified by the employer is not lost by a failure of completion of the transaction because of the default of the employer or his refusal to go through with the deal.' " *Id.* at 250, 7 O.O.3d at 303, 372 N.E.2d at 1377, quoting 12 American Jurisprudence 2d (1964) 940, Brokers, Section 199.

■ The terms of the parties' agreement in *Scott v. Cravaack* are not clearly stated in that court's opinion. It is undisputed in this case that the appellant was not bound to sell her property to the Mullinses until the Mullinses had accepted the appellee's new counteroffer in writing. Until the Mullinses accepted appellee's counteroffer, appellee was free to change her mind and withdraw her counteroffer. Appellant makes the anomalous argument that the appellee should be legally bound to it before the purchaser was legally bound to the seller (the appellee).

For purposes of this discussion, we will assume the parties considered the property was "sold" when the parties entered into an enforceable contract to sell the appellee's residence. For instance, "[i]t seems settled by well-reasoned authority that the execution of an enforceable contract *for* the sale of leased premises is sufficient to terminate the rights of the lessee under a lease covenant granting the privilege of renewal if the lessor shall not" (emphasis added) "sell" the real estate. Annotation, Renewal of Lease in Case of Sale (1951), 15 A.L.R.2d 1040, 1040–1041.

It being undisputed that no enforceable contract was entered into between Parden and the Mullinses, the appellant's sole assignment is overruled.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

WOLFF and GRADY, JJ., concur.