MARTINEAU, D. B. A. M & M REALTY COMPANY, PLAINTIFF, *v.* GRESSER ET, DEFENDANTS.

Common Pleas Court, Clinton County.

No. 18993. Decided March 26, 1962.

552

*Messrs. Kyle, Conlan, Wulsin & Vogeler*, and *Mr. J. Leland Brewster, II*, for plaintiff.

*Messrs. Dennis & Cartwright*, and *Mr. Max H. Dennis*, for defendants.

SWAIM, J.   Plaintiff claims $918.00 for alleged commission on alleged real estate sale, alleging that defendants requested him to find purchaser for newly erected house, that an offer he obtained from Ora Edith Lotton and John E. Lotton to purchase for $15,300, was accepted by defendants, who agreed to pay plaintiff 6% commission; that later defendants deeded property to Lottons, who simultaneously mortgaged same for $12,800; he claims he has fully performed and defendants have refused to pay the commission.   Defendants admit the ownership and listing, allege that Lottons' offer was subject to and contingent upon Lottons' ability to obtain suitable financing, within the contract 30 days, which was not done; that the offer expired and became void; that it had been agreed that unless such financing was obtained, nothing would be due, and they admit the deed to the Lottons, stating that another broker made the sale, after plaintiff's contract had expired; that plaintiff's efforts did not produce the sale and deny that anything is due him.   Plaintiff, by reply, denied all new matter in defendant's amended answer.

The parties waiving jury, this was tried to the Court alone. Plaintiff pleaded and defendant stipulated, in evidence, that plaintiff was licensed real estate broker, thereby complying with Section 4735.21, Revised Code.

The "contract" in question, between the Lottons and the defendants, through M & M Realty Company is made upon "CONTRACT TO PURCHASE form approved by THE CIN-

CINNATI REAL ESTATE BOARD," the inserted year "61" should have been "60," which is set forth herein, omitting paragraph 1 (name and address of broker), 4 (property is zoned), 10 (rents, interest and current operating expenses shall be apportioned pro rata), and 11 (purchaser assumes responsibility of insuring property), (Nothing was typed or written in such paragraphs, by filling in blanks or adding to same); all of the following being printed, except the parts emphasized in Caps and Small Caps or figures enclosed in brackets, of which there was typewritten: "Cincinnati" and "61" in Paragraph 2; "No exceptions" in No. 3; "Five Hundred," "500" and "Cash on delivery of deed" in No. 6; "30" in No. 7; "after closing" in No. 8; "no exceptions as per deed of record" and "61" in No. 9; "61" in No. 14; "Cincinnati" and "61" in No. 16; "6" in No. 17; "Cincinnati" and "61" in No. 19; all other emphasized words in italics, were hand-written by Mildred Rusk, Plaintiff's salesman, except signatures of Ora Edith Lotton, John E. Lotton, Earl Gresser, Ollie Gresser and Adren N. Miller, each signing own name (and also possibly "5/14" in No. 16, may have been written by Adren N. Miller, nothing being shown by whom this was written). Two words were crossed out: printed "Hamilton" in No. 2, and typed "after" in No. 8.

CINCINNATI Ohio *5/13* 19[61]

2 I/we hereby offer to purchase from the Seller through you as Real Estate Broker, the following described real estate situated in *Clermont* County, Ohio, as per deed of record, with all improvements thereon, and with all appurtenant rights, privileges and easements; and known as:

*Milford*        *Lot 37 Brick one Family Dwelling*
*Ohio*        *Kash St. property of*
                *Mr. & Mrs. Gresser*
                *as per Deed of Record*

3 This Contract shall cover all appurtenances and fixtures belonging to the Seller, including all lighting, heating, plumbing fixtures and equipment, shades, linoleum, affixed wall mirrors, curtain rods, venetian blinds, awnings, window and door screens, storm windows and doors, landscaping, shrubbery,

television aerials, et cetera., if any, which are on premises, and used in connection therewith.

Except: No EXCEPTIONS *To seed & grade lawn & fix front step clean windows*

5 For the sum of *Fifteen Thousand Three Hundred* Dollars (*$15,300*)

6 Deposit to apply on purchase price FIVE HUNDRED (*Note* Dollars. ($500)

Balance of purchase price to be paid as follows:

CASH ON DELIVERY OF DEED.     *To be financed with Two Thousand ($2,000) as Down Payment*

7 Said real estate shall be conveyed by general warranty deed with proper release of dower, if any, on or before 30 days from acceptance of this offer.

8 Occupancy shall be given (*at*) CLOSING.

9 Title shall be free, clear and unencumbered upon delivery of deed, and free from City and County Orders affecting said property, as of date of acceptance of this offer, except NO EXCEPTIONS AS PER DEED OF RECORD and except taxes and assessments payable in *June* 19[61], and thereafter which the purchaser agrees to pay.

12 This offer and acceptance thereof shall constitute the entire agreement of the parties, and no oral or verbal or implied agreement or understanding shall cancel or vary the terms of this contract.

13 Said deposit shall be held by Real Estate Broker, as trustee for the Seller and Purchaser, pending the delivery of title and settlement of the Transaction. Said deposit shall be promptly returned to purchaser in the event Seller does not accept this offer in accordance with its terms.

14 This offer shall remain open for acceptance until the *16* day of *May* 1961 midnight, and a signed copy shall be promptly returned to the purchaser in the event of its acceptance.

*Ga 14982*

15 Witness     *Mildred Rusk*     *Ora Edith Lotton*
*John E. Lotton*
Purchasers (Have husband and wife sign, if any)

Name of Cooperating Broker

## ACCEPTANCE

CINCINNATI   Ohio   *5/14*   19[61]

M & M Realty Company
Name of Broker or Company

I/we hereby accept as Seller the above offer submitted to me/us by you as Real Estate Broker and I/we agree to pay you for your service a commission of [6] per cent of said purchase price, such being the rate of commission approved by The Cincinnati Real Estate Board in such a transaction, and I/we hereby authorize you when this transaction is completed in accordance with this contract, to apply so much of said deposit as may be necessary to pay said commission to you.

Witness                  *Earl Gresser*
*Adren N. Miller*        *Ollie Gresser*
                         Sellers (have husband and
                                   wife sign, if any)

Receipt of Broker
CINCINNATI   Ohio   19[61]

I hereby acknowledge receipt of a deposit of *Five Hundred Note* Dollars ($ *500 x*) in connection with the foregoing offer and on the terms therein provided.

M & M REALTY COMPANY
real Estate Broker
by *Mildred Rusk*

The evidence showed that after plaintiff and other brokers had been given "open listing" of defendant's property, Lotton 'phoned plaintiff's office, following an advertisement, and Mildred Rusk, licensed Salesman for plaintiff, contacted the Lottons, showed them the property, and drew up the offer, she said she would arrange loan, as Lotton had only $2000 to pay on property and would have to borrow the rest ($13,300). She or office secretary did the typing and she wrote all of written part of "Contract to Purchase," before signature by Lottons. The time limit of "30 days" (as to delivery of deed after "Acceptance") was placed in "Offer" by her as "it is required to have a certain number of days there," she testified that it was "usually understood that it is tried to be" consummated within that time;

that the wording "to be financed with Two Thousand ($2,000) as down payment" was written by her "as protection for our client" "the prospect." Lottons signed three applications for loans. After "Contract" and loan applications were signed, she turned all papers over to Adren N. Miller, office manager for plaintiff (Miller did not testify), who had charge of financing, and who contacted the defendants, with whom there was discussion about the financing by Lottons, due to their small payment and the contract had provision for 30 day time for closing. Miller told defendants that he would arrange for the financing, there was discussion about the 6% commission, and the defendants signed the "Acceptance"; Lotton, personally, failed to get loan from two different companies, and told Miller to go ahead with financing. About three weeks after "Acceptance," Miller 'phoned Mrs. Gresser, saying that he had not been able to get loan for Lottons. Lotton inquired from Miller about why he could not get loan—when was he going to get it; and got no reply from Miller. Mrs. Gresser unsuccessfully tried to reach Miller, several times, "before time ran out," and he failed to call her, although she left request for him to do so and she also called Lotton, who knew nothing.

Mrs. Rusk thought an application for loan had been approved by some company, no name or address or definite information given by her, and stated that Miller asked her to get extention on contract, as "it was getting close to dead line when our contract ran out," she contacted Lottons, but nothing definite was done. After time had run out, Miller called Lotton stating he was going to try to get extention, and then Lotton called Miller and told him to "forget about it, I am washing my hands of you right now." The Gressers at no time were contacted by any one about an extention of time of the "Contract" and "Acceptance." No closing date was ever set for this deal.

"After the time had run out" (30 days from Acceptance on May 14, or June 13), on June 17, 1960, Earl Gresser saw Morton Hightower, licensed real estate broker of Blanchester, and gave him a written exclusive sale contract on this property. On June 19, 1960, Gresser brought the Lottons into the Hightower office, stating that "they had been interested" in the property, and "Offer" and "Acceptance" was signed by the

Lottons and the Gressers, for consideration of $15,300 and Hightower arranged loan from Standard Building and Loan Company. Deed from Gressers to Lottons was executed on July 7, 1960, this deed and a mortgage from Lottons to Standard Building and Loan Company for $12,800 dated July 26, 1960, were recorded in Recorder's Office, Clermont County, Ohio, on July 27, 1960. Real Estate commission on sale was paid to Morton Hightower. The $500 down payment note of Lottons was returned by counsel for Plaintiff to Mr. Lotton at time of trial.

Plaintiff claims that he was "the procuring cause" of the Gresser-Lotton sale, and therefore entitled to the commission, regardleiss of any time stated in the contract or of time of closing. Was he "the procuring cause"? This rule is generally applied where there has been no written contract of sale and purchase, and it is unnecessary to decide this point for the ultimate decision herein. But, disregarding the written contract, the following is evident: Plaintiff, under his employment, was called upon to find or procure a purchaser "ready, willing and able" at the time to take the property at price and upon terms stipulated, and a proposed purchaser cannot be "able" to purchase, when he is dependent, for part or all of the funds, upon third parties, who are not bound to furnish such funds. In order to make the Lottons "able" to purchase, the broker, through his agents, undertook the work of finding some loaning agency which would supply the money; such agency was not found by Lottons or by plaintiff or his agents, and Mrs. Gresser, one of the sellers, who so notified. Thereafter, defendants went to Mr. Hightower, who found an agency which would supply the money to the Lottons, whereby the transaction could be consummated. Therefore, under "the procuring cause" rule the court finds that the plaintiff was not "the procuring cause" of this sale and purchase, and on this theory of plaintiff, the Court finds plaintiff is not entitled to judgment.

A broker, in pursuance of his employment, may have the parties execute a contract, after he has procured a purchaser, ready and willing to enter into written contract on the employer's, or seller's, terms, and when such written contract is entered into, there can be no issue, as to whether the person procured was "ready, willing and able to perform." However,

it is the broker's duty, in such a case, to see that the parties enter into "an enforcible contract" or "a binding contract of sale and purchase." Here, a contract of purchase and sale was signed. Was it enforcible? Was it binding?

Plaintiff further claims that "time" was not of the essence of this contract. The contract, or "Offer to Purchase" and "Acceptance" was on a standard form of Plaintiff, prepared by his agents, without aid or advise of counsel. Plaintiff must accept the responsibility for the contract so drawn, as the Lottons and the Gressers had nothing to do with its preparation. Item 12 therein provides that "This offer and acceptance thereof shall constitute the entire agreement" and that "no oral or verbal or implied agreement or understanding shall cancel or vary its terms."

This action is in law, between the broker and the sellers, not in equity between the purchasers and the sellers. A distinction exists between law and equity (chancery) regarding time in a contract, that has been well stated in *Longworth* v. *Taylor* (U. S. Circuit Court), 1 Ohio Fed. Dec., 643 (affirmed in *Taylor* v. *Longworth*, 14 Peters, 172, 39 U. S., 172, 10 L. Ed., 405, 2 Ohio Fed. Dec., 7), as follows:

At law, time is always an essential part of a contract; but in chancery, the court considers it in connection with the circumstances of the case. The rule at law is so inflexible as not to admit of any excuse, however strong, for a failure to perform the contract at the time fixed. But it is otherwise in chancery. Not that chancery disregards time as immaterial, but if the party can show that he was prevented by inevitable accident or any justifiable excuse from performing his part of the contract at the time stipulated, and the other party has suffered no material injury by the delay, the court will not withhold its aid.

The sale was not consummated by delivery of deed within the time in paragraph 7 (30 days from date of acceptance), that is, before June 13, 1960. Plaintiff, himself, now attempts to vary the express terms of contract, by testimony that it was "usually understood" that a sale is tried to be "consummated within the contract time." All testimony showed that all parties, including plaintiff's own agents, regarded the "30 day" period, from date of acceptance, as a limitation upon duration

of contract, that upon all parties the same was valid and binding, and that after such date, this contract as written was null and void. It is not up to this Court to write a new contract for the parties, in violation of the express contract terms. Can Plaintiff now claim that after such 30 days defendants were not free to place this real estate with some other broker? However, this "30 day" clause is not the deciding matter herein.

If the plaintiff, in pursuance of employment, as broker, by himself, or through his agents, had the parties enter into a written contract, there was an obligation upon him, the broker, that such written contract be *enforcible*, that it be a *binding* contract of sale and purchase. If the contract was unenforcible, then as broker, he had rendered no service of any kind to his employers (here, the defendants), and he cannot recover anything. Again claiming that time was not of the essence of the contract, he claims that his contract was and is enforcible in equity, and therefore, he should recover in this action in law.

Was this "contract" enforcible in equity? Everyone knew that the Lottons had only $2,000 towards purchase money, and would have to obtain balance by loan. Therefore, Mildred Rusk, plaintiff's agent, inserted wording in Paragraph 6, which she (despite Paragraph 12) testified had such meaning. (These words could also mean that the Gressers were to carry the balance above a $2,000 payment by Lottons, in spite of the printed words: "Cash on delivery of deed.")

If the Lottons had refused to purchase, and Gressers had brought an equitable action of specific performance, no Court could have made a decree of payment by Lottons, binding upon them, when they were dependent upon third parties for money to fulfill the obligation to pay, and such third parties were not party to any part of this contract. Where a defendant's performance depends upon the consent or approval of one not a party to the contract, who is free to withhold the same, specific performance will not be decreed, where it does not appear that such consent or approval has been or can be obtained. See: Williston on Contract, Sec. 1422; 81 C. J. (2d), 439-440; 49 Am. Jur. 89. "Equity will not do a vain thing," and therefore, such a decree against Lottons would have been refused, under the facts of this transaction. That the Lottons later procured the money from other sources does not change this situation.

Therefore, the contract, as entered into, was not an "enforcible" contract, not a "binding" contract of purchase and sale, and the broker, the plaintiff herein, has rendered no service of any value to his employer, the defendants, and he is not entitled to recover in this action.

But more important herein relates to what was written into the "Contract to Purchase" by Mildred Rusk, licensed salesman for plaintiff, the licensed real estate broker. In Paragraph 3, she typed or had typed in "No exceptions" and then wrote in "to seed & grade lawn & fix front step. Clean windows," and in Paragraph 6, typed or had typed in "Cash on delivery of deed," and wrote in "To be financed with Two Thousand ($2,000) as down payment."

Such words written by Mildred Rusk into Paragraph 6 in the "Contract to Purchase," before the Lottons signed same and before the defendants, the Gressers, signed the "Acceptance," go beyond what the Supreme Court of Ohio has plainly stated may be inserted by a broker (or salesman) in a contract for sale of real estate:

After referring to its previous opinions, concerning the principles relating to the unauthorized practice of law, of *Land Title Abstract & Trust Co.* v. *Dworken*, 129 Ohio St., 23, 193 N. E., 650, and *Judd* v. *City Trust & Savings Bank*, 133 Ohio St., 81, 12 N. E. (2d), 288, the Supreme Court in Per Curiam opinion, says as to a real estate printed form contract:

The sole question presented by plaintiffs' appeal is whether the defendant has violated this rule by merely filling in printed blank forms of contract for the purchase of realty. More specifically, does the filling of these printed blank forms require the exercise of legal skill, or does it constitute merely the clerical services of recording the stated agreement of the parties to the transaction.

This court finds itself in agreement with the reasoning and conclusion of the lower courts to the effect that the supplying of simple, factual material, such as the date, the price, the name of the purchaser, the location of the property, the date of giving possession, and the duration of the offer requires ordinary intelligence rather than the skill peculiar to one trained and experienced in the law,

*Gustafson* v. *Taylor & Sons* (1941), 138 Ohio St., 392, 35 N. E. (2d), 435, 20 Ohio Opinions, 484.

This case originated in the Court of Common Pleas of Cuyahoga County, whose opinion, reported in 17 Ohio Opinions, 534, 31 Ohio Law Abs., 562, 4 Ohio Supp., 355, says in the pertinent part:

Filling in the date, the name of the purchaser, the location of the property, the sale price, the date of giving possession, the terms of sale, the time within which taxes are to be paid, the placing of the deal in escrow within a reasonable time, the time of the existence of the offer and the signature of the owner, do not require the exercise of legal skill. But these blanks can be filled in by the average person possessing average intelligence and learning. - - - ʹ

While the form used is entitled "offer to purchase," we find that it is in fact "an offer to purchase and acceptance to sell," the very thing which the real estate agent is employed to bring about, - - - the real estate broker was in fact merely the messenger boy in taking the offer to purchase to the seller and the seller thereafter signing and agreeing to the same.

The above mentioned case of *Land Title Abstract & Trust Co.* v. *Dworken* (1934), supra, also reported in 1 Ohio Opinions, 313 (opinion in Court of Appeals reported in 37 Ohio Law Rep., 79, 12 Ohio Law Abs., 399), involved the matter of illegal practice of law by title guarantee and trust companies, operating under laws of the State of Ohio, and in the syllabus, the Supreme Court held:

1. The practice of law is not limited to the conduct of cases in court. It embraces the preparation of pleadings and other papers incident to actions and special proceedings and the management of such actions and proceedings on behalf of clients before judges and courts, and in addition, conveyancing, the preparation of legal instruments of all kinds, and in general all advice to clients and all action taken for them in matters connected with the law.

The Supreme Court affirmed the judgment of the Court of Appeals, which among other things perpetually enjoined the defendants from:

2. Drawing, preparing or advising in relation to the preparation of deeds, mortgages, releases, leases, affidavits, contracts

and other documents pertaining to real estate conveyances or transactions for the benefit of others, where defendant has no direct or primary interest as principal or loan agent.

In the above mentioned case of *Judd* v. *City Trust & Savings Bank* (1937), supra, also reported in 10 Ohio Opinions, 95 (for opinion in Court of Appeals, see 25 Ohio Law Abs., 363), the Supreme Court of Ohio affirmed, after modifying, an injunction granted against the Bank from engaging in practices that constituted the practice of law, and among other things, in the syllabus, held:

2. The practice of law consists essentially of the performance of legal services for others. Banks and trust companies in Ohio are engaged in the unauthorized practice of law, when through their regular salaried officers and employees, who may be attorneys admitted to practice in Ohio, they prepare and draft wills, trust agreements, or contracts, and other instruments requiring the exercise of legal skill for their customers or patrons. And it makes no difference that such banks may be designated in such instruments in fiduciary capacities.

Another case, pertinent herein, is *In re Unauthorized Practie of Law in Franklin County* (commonly called *"The Gore Case"*), Court of Common Pleas opinion reported in 7 Ohio Opinions, 110, 22 Ohio Law Abs., 598, 1 Ohio Supp., 102, with affirming opinion of Court of Appeals (1937) reported in 58 Ohio App., 79, 11 Ohio Opinions, 495, 26 Ohio Law Abs., 315, 15 N. E. (2d), 968, in which Ivan H. Gore, a licensed real Estate Broker, was enjoined from the unauthorized practice of law, "in the drawing and execution of preliminary contracts, deeds, mortgages, land contracts and leases." The 1937 judgment therein may have been modified after and in accordance with the decision of the Supreme Court in *Gustafson* v. *Taylor & Sons, supra* (1941), to allow Mr. Gore to fill in blanks in printed "Offer to Purchase" and "Acceptance" contract forms with "simple, factual material."

The parts that Mildred Rusk filled in or had filled in, by typewriter, in the "Contract to Purchase," in the "Acceptance" and in the "Receipt of Broker" came within the "simple, factual matter" allowed to be filled in by the real estate broker, or his salesman. In Paragraph 2, the hand-written parts as to the date, the location of the property in County, Municipality

and State, together with identification of the property (although there might have been better identification), in Paragraph 5, the price, in both words and figures, in Paragraph 6, the word "Note," in Paragraph 8, the insertion of the word "at" and striking out the typed word "after," in Paragraph 9, the word "June" as to taxes, and in Paragraph 14, the date of duration of offer, in the "Contract to Purchase," are all permissible words, as all are within the "simple, factual material" that may be inserted by a Real Estate Broker, or salesman, under the judgments of the various courts. Also, in the "Acceptance," the hand-written date, is also within the allowable "simple, factual material." The "Receipt of Broker" is a receipt for a down payment, and the hand-written part therein "Five Hundred Note—500x" comes within the allowable matters that may be inserted in such a contract by such Broker or Salesman.

Why such person may not fill in lease form blanks is well set forth in the Court of Common Pleas opinion in *Gustafson* v. *Taylor & Sons, supra*, and as to warranty deeds, in the Court of Common Pleas opinion in *In re Unauthorized Practice of Law in Franklin County, supra*.

The hand-written wording in Paragraph 3 and in Paragraph 6, especially the latter, does not come within the allowable items of "simple, factual material." Inasmuch as the words so inserted in Paragraph 6 are so plainly the drawing of a contract between the parties, the Lottons and the Gressers, it is unnecessary to go into the question of the words so inserted in Paragraph 3. Yet it is apparent that the words so inserted come directly within the matter well set forth in the two opinions immediately set forth above. In Paragraph 3, Mildred Rusk went beyond the allowable items of "the date, the price, the name of the purchaser, the location of the property, the date of giving possession and the duration of the offer" and "the time within which taxes are to be paid." These inserted words in Paragraph 3, are "to seed & grade lawn & fix front step, clean windows." What does this mean at the middle of May "to seed & grade lawn." Fertilizer or no fertilizer? Protected by straw or by burlap or by neither? Kind of grass seed? Amount? To be watered by sellers? Grade lawn to front or to back of lot? Topsoil to be spread? And many other questions. These ap-

parently "simple" words come directly within the reasons why real estate brokers and salesmen are not allowed to write deeds, leases, contracts, and the like.

As to the words inserted in Paragraph 6, it is apparent upon the face of the same that a Contract was being written between the buyers, the Lottons, and the sellers, the Gressers. It is not necessary to go into lengthy explanation of what a contract is, that is well known. The writing of such contracts may not be done by real estate brokers or by salesmen, that definitely is the practice of law. (See the opinions in Courts of Common Pleas last cited above.)

The Supreme Court of Ohio said as to the practice of law in the syllabus in *Land Title Abstract & Trust Company* v. *Dworken, supra.*

3. The practice of law involves a personal relation which cannot be fulfilled by a corporation and the practice of law is confined to those who have met the prescribed requirements and have been regularly admitted to the bar.

7. The right to practice law conferred by the state is a special privilege in the nature of a franchise and a possessor thereof may be protected by injunction from the invasion of the right thus vested in him.

and in the syllabus of *Judd* v. *City Trust and Savings Bank, supra,*

1. In Ohio, the power to regulate, control and define the practice of law rests inherently in the judicial branch of the government.

and in the last case, it also said that Trust companies have right to do business under the laws of Ohio, but

5. This privilege, however, does not operate as a license to render legal services for others.

The license of a Real Estate Broker, and a license of a Salesman for such broker, under the laws of Ohio, do not allow either one to engage in the practice of law, or to do acts that would be practice of law, such as writing deeds, mortgages, leases, contracts for sale of real estate, etc. When Mildred Rusk inserted the quoted words in Paragraph 6, she was writing a contract for the parties, relating to the payment of only $2,000 by the buyers, the Lottons, as such words go far beyond the allow able words setting forth "simple, factual material." That is

apparent on the face of the same. The same is true of the inserted words in Paragraph 3. She was and is a layman, and the practice of law by a layman was and is against public policy. Any rights that the plaintiff might have had against the defendants here under a legal contract would not arise under an illegal contract executed in violation of public policy.

The courts have invoked several maxims to defeat illegal contracts; *ex dolo malo oritur actio*; (a right of action cannot arise out of fraud); *ex turpe causa non oritur actio*; (no action arise out of an immoral consideration); *ex pacto illicito non oritur actio*; (from an illicit contract, no action arises), and *in pari delicto potior est conditio defenditis* (when both parties are equally in fault, the condition of the defendant is preferable).

The last two maxims are applicable to this action, as it is an elementary principle that one who has himself participated in a violation of law cannot be permitted to assert in a court of justice any right founded upon or growing out of the illegal transaction. As an example, see *Collacott Realty Company, Inc.,* v. *Homuth* (1939), 13 Ohio Opinions, 250, 28 Ohio Law Abs., 211, 2 Ohio Supp., 118, where realty company that had drawn a lease was denied judgment for its services in procuring the lease and the defendant was denied judgment for recovery of money he had paid as part payment for such services to the realty company.

It is also elementary that unlicensed persons engaging in occupations or professions, that are licensed, cannot recover compensation for their services. Here, Mildred Rusk was practicing law, which illegal practice was ratified and confirmed by this plaintiff. He is now seeking this court to give him judgment against the defendants basing his action upon this illegal contract. He is seeking the assistance of this Court for compensation for the performance of something that is against public policy, as the legality cannot be separated from the illegality, and the whole transaction, as embodied into the "Contract of Purchase" and "Acceptance" was and is illegal.

The plaintiff has no rights of any kind under this contract, and he has no right to recover anything from the defendants.

However, there is more involved in this "contract" than merely that the plaintiff cannot recover anything. The illegality

of the contract, the illegal act of Mildred Rusk in the writing of this contract, through the insertion of the words in Paragraph 6 (disregarding for this statement of law, the words inserted in Paragraph 3), beyond "simple, factual material," affects the rights of the purchasers, the Lottons, and of the sellers, the Gressers. If a contract is void for illegality, and against public policy, no party can have any rights thereunder. It is elementary that one who has himself participated in a violation of law cannot be permitted to assert in a court of justice any right founded upon or growing out of the illegal transaction. Mildred Rusk, through her license as salesman for the plaintiff, the broker, was the representative of the Gressers, and the language she inserted in the contract would be regarded as their act, and they also approved the inserted language by their "Acceptance" of the same. Also, the language so inserted was inserted at the express or implied request of the purchasers, the Lottons, and they signed the same after such words were inserted. The drawing of such illegal contract by Mildred Rusk would therefore be regarded as their act, also. Such an illegal contract, in which both the sellers, the Gressers, and the purchasers, the Lottons, participated could not be enforced in law or in equity, either directly or indirectly, by either of them. This illegal act of Mildred Rusk was a great disservice to both the Lottons and to the Gressers, and was violation of the rights and duties of a real estate salesman, as has been provided by the General Assembly of Ohio, and defined by the Courts of this State.

The contract was void and illegal, and the plaintiff, as broker, has failed to do that which he, as licensed real estate broker, was employed to do, that is, to have executed an "enforcible contract" or "a binding contract of sale and purchase," as this contract is not enforcible and is not binding upon either the sellers or the purchasers, in either law or in equity.

The plaintiff had the burden of proving that the defendants owed him some money, this he failed to do, and it has been shown that there are several reasons why the plaintiff cannot recover anything from the defendants.

It is not part of our system of jurisprudence that the Courts can grant judgment against the plaintiff in favor of the defendants for the expense and trouble to which they have been

placed in defending such an action as this, instituted by the plaintiff upon such an illegal contract. In the opinion of the Court, this would be a proper action in which the Court would have to hear and give serious consideration upon a motion for such a judgment against plaintiff, if the same were in our judicial system.

The plaintiff's prayer for judgment will be denied, judgment for the defendants on the merits; judgment in favor of defendants against plaintiff for their costs herein; judgment against plaintiff for the entire costs of the action. Appropriate entry to be filed forthwith.