FERGUSON REALTORS, APPELLANT, *v.* BUTTS, APPELLEE.

(No. CA86-09-066—Decided June 29, 1987.)

*Lindhorst & Dreidame* and *J. Roger Blust,* for appellant.

*Bauer, Morelli & Heyd Co., L.P.A.,* and *James Edmiston,* for appellee.

*Per Curiam.* This cause came on to be heard upon an appeal from the Court of Common Pleas of Clermont County.

Plaintiff-appellant, Ferguson Realtors, appeals the judgment of the trial court denying it recovery of a $21,000 sales commission allegedly due under an exclusive agency agreement.

Defendant-appellee, Buford Butts, owns two commercial buildings situated on a parcel of real estate at 971 Ohio Pike in Clermont County. In August 1983, Butts contacted Ferguson Realtors through its sales agents, Robert and Marcia Eads. Butts wanted to sell the front building and that portion of the lot bordering Ohio Pike for $300,000, while retaining ownership of the second building and rear portion of the lot with proper legal access. Butts signed a six-month exclusive sales agreement with Ferguson Realtors whereby Ferguson Realtors would receive seven percent of the gross sale price upon the sale of the property or the procurement of a written offer to purchase from a purchaser who was ready, willing and able to purchase. The broker even arranged to have an engineer, known by the broker, handle any survey work which might be required in the necessary division of the property.[1]

Butts received no written offers during the initial listing period and, on February 27, 1984, he extended the exclusive sales agreement for an additional six months. During this second period, Butts received several oral offers which primarily consisted of leases and options to purchase. The lack of a firm offer to purchase caused Butts to investigate the possibility of leasing, rather than selling, the front building. Butts raised the alternative of a lease in a May 21 letter to Robert Eads.

On July 27, 1984, Norma Ferguson, the president and office manager of Ferguson Realtors, obtained an offer from Glenn Schmidt and Susan Schmidt to purchase the front building and a portion of the lot. Ferguson prepared a purchase contract which the Schmidts executed. The contract provided, *inter alia,* for a purchase price of $300,000 and that the Schmidts were to receive fee simple title to the the entire frontage of the property. Ferguson added an exception to the title, however, reserving to Butts "an easement to rear bldg. & lot." The record reflects that the broker transmitted the purchase offer to Butts on July 31, 1984. Although Butts denied receiving any written offer until a copy of the same was served with the complaint, he did acknowledge receiving an oral offer. Butts claimed, however, that such offer was only for $275,000 and he accordingly rejected it since it was below his asking price.

The record further reflects that during the month of July 1984, Butts had been negotiating to lease the property. On July 12, he signed a lease in favor of NAPA Automobile Parts but did not learn until July 31 that NAPA had approved and accepted the lease. Norma Ferguson claimed that she had no knowledge of the lease until July 31, but both Susan Schmidt and Robert Eads acknowledged that they were aware of Butts' negotiations with NAPA prior to July 27.

There was also evidence in the record that any division of an existing tract of land required the approval of the Clermont County Planning Commission. The Clermont County Subdi-

---

[1] Butts testified that he sought a realtor's assistance because he was uncertain whether he could subdivide the property and still retain ownership of the rear lot.

vision Regulations also required that all lots have a minimum roadway frontage of twenty feet, that such frontage be owned in fee simple, and that any frontage composed of a "panhandle" (a strip of land through an adjoining lot) could not exceed three hundred feet in length.[2] Carl Hartman, the surveyor recommended by Ferguson Realtors, testified that any individual whose property did not meet the specifications in the regulations could still receive approval for the contemplated division by obtaining a variance from the planning commission. There was no guarantee, however, that the planning commission would grant a requested variance.

Following trial without a jury, the court concluded that the proposed purchase contract, as written, was unenforceable, and therefore the broker had not provided service for which a commission could be recovered. The court granted judgment in favor of Butts and dismissed Ferguson Realtors' cause of action.

Ferguson Realtors raises two assignments of error which read as follows:

### Assignment of Error No. 1

"The trial court erred to the prejudice of the plaintiff in granting judgment to the defendant."

### Assignment of Error No. 2

"The trial court erred to the prejudice of the plaintiff in denying plaintiff's counsel the right to impeach a witness with a prior inconsistent statement in the form of an affidavit."

In the second assignment of error, Ferguson Realtors claims that the trial court improperly denied it the opportunity to impeach its own witness with the witness' prior inconsistent statement. The witness in question was Carl Hartman, who Ferguson Realtors contacted to perform the survey work needed for subdividing Butts' property. Hartman testified that Marcia Eads, of Ferguson Realtors, arranged for him to contact Butts. Butts informed Hartman of the proposed subdivision whereupon Hartman advised Butts that the subdivision could only be accomplished by either conveying the rear lot to adjacent property with an existing roadway frontage or by creating a panhandle to Ohio Pike through the front lot. Hartman further testified that he had told Butts of the need for a panhandle in late 1984, specifically after September 12, 1984, which Hartman identified as the first time he had spoken with Butts.

Ferguson Realtors then attempted to impeach Hartman, its own witness, with a June 21, 1985 affidavit in which Hartman stated that he informed Butts of the need for a panhandle in December 1983 or early January 1984. The court denied Ferguson Realtors the opportunity to impeach Hartman with such affidavit.

Evid. R. 607 provides in part that:

"The credibility of a witness may be attacked by any party except that the credibility of a witness may be attacked by the party calling the witness by means of a prior inconsistent statement only upon a showing of surprise and affirmative damage. * * * "

Under this rule, a party wishing to impeach his own witness with the witness' prior inconsistent statement must first demonstrate that he was surprised by the witness' testimony and that the testimony affirmatively damaged the party's case. Surprise can be shown if the testimony is materially inconsistent with a prior written

---

[2] The corridor or panhandle needed to allow Butts' back lot to reach Ohio Pike would have exceeded the three-hundred-foot maximum length.

statement and counsel did not have reason to believe that the witness would recant. *State* v. *Stearns* (1982), 7 Ohio App. 3d 11, 15, 7 OBR 12, 16, 454 N.E. 2d 139, 143. The question of surprise is one which is entrusted to the trial court's discretion. *State* v. *Jarvis* (Mar. 23, 1987), Butler App. No. CA86-07-110, unreported. Affirmative damage is established when the witness testifies to facts which contradict, deny or harm the party's trial position. *State* v. *Stearns, supra.*

According to Ferguson Realtors, Hartman's affidavit demonstrates that Butts was aware of the need for a panhandle prior to renewing the exclusive sales agreement on February 27, 1984. The obvious implication is that Butts himself was responsible for the purchase contract's being unenforceable since he failed to notify Ferguson Realtors that an easement could not be granted in favor of the rear lot absent a variance from the planning commission.

There is evidence in the record which clearly demonstrates that Ferguson Realtors was aware of the rear lot's requirement for a fee simple roadway frontage well before the Schmidts' purchase contract was drafted. The testimony of both Hartman and Marcia Eads, as well as Eads' notes, indicates that Hartman and Eads had discussed the rear lot's frontage requirements before July 27, 1984. One of Eads' notes contains a reference to a twenty-foot driveway, described in the following manner: "not an easement — will become part of building in back."

Whether Butts had notice of the legal condition which ultimately rendered the Schmidts' offer invalid prior to Butts' entering the second listing agreement is immaterial. There is uncontroverted evidence that Ferguson Realtors, through its agents, also knew of the frontage requirement. As a real

estate agent, Eads was required to be under the supervision of a licensed real estate broker in all of her activities relative to the sale of real estate. *Fulton* v. *Aszman* (1982), 4 Ohio App. 3d 64, 4 OBR 114, 446 N.E. 2d 803, paragraph three of the syllabus. Within the context of this relationship, Eads' knowledge is imputed to Ferguson Realtors. Despite this knowledge, Ferguson Realtors proceeded to draft a purchase contract providing for the granting of an easement which was unenforceable absent the approval of a third party, *i.e.,* the planning commission. Although the broker may have been surprised by Hartman's testimony, the testimony does not cause the affirmative damage necessary to invoke the impeachment process available under Evid. R. 607.

Furthermore, even if the trial court erred, such error was harmless since it does not "affect the substantial rights of the parties," nor was the refusal to permit impeachment "inconsistent with substantial justice." Civ. R. 61. The second assignment of error is therefore overruled.

The first assignment of error claims that the trial court erred in granting judgment to Butts. Ferguson Realtors argues that it is entitled to its commission since it produced a purchaser who was ready, willing and able to perform and that Butts prevented the consummation of the sale by leasing the property. The broker further contends that it should not be denied its commission simply because the purchase contract cannot be enforced. In effect, Ferguson Realtors apparently argues that the decision was against the weight of the evidence.

We do not disagree with the basic legal maxim that a real estate broker is entitled to a commission when he procures a buyer who is ready, willing and able to purchase the subject property on those terms specified by the owner.

*Scott* v. *Cravaack* (1977), 53 Ohio App. 2d 248, 7 O.O. 3d 302, 372 N.E. 2d 1375; *Harley E. Rouda & Co.* v. *Springtime Co.* (1975), 49 Ohio App. 2d 49, 3 O.O. 3d 116, 359 N.E. 2d 450. However, this principle is subject to the additional requirement that the purchaser and seller be able to enter into an enforceable sales contract. *Id.* Even if the parties contract with one another, the broker still cannot recover a commission unless the contract is valid and enforceable. See *Ballard* v. *Thompson* (1965), 5 Ohio App. 2d 92, 34 O.O. 2d 197, 214 N.E. 2d 102.

Ferguson Realtors submits that Butts prevented the consummation of the sale by leasing the property to NAPA. However, the Schmidts' written offer, whenever presented, would not permit Butts to retain the use of the property in the rear, as the property could not be divided so as to have the roadway frontage required under the planning commission's regulations. Even if Butts had decided not to lease the property and had accepted the Schmidts' offer, the contract could not be enforced since the easement specified therein could neither be retained by Butts nor conveyed by the Schmidts absent the granting of a variance by the planning commission, which neither the vendor, purchaser, nor broker could guarantee.

In *Martineau* v. *Gresser* (C.P. 1962), 88 Ohio Law Abs. 550, 19 O.O. 2d 374, 182 N.E. 2d 48, the court stated the following:

"A broker, in pursuance of his employment, may have the parties execute a contract * * *. However, it is the broker's duty, in such a case, to see that the parties enter into 'an enforcible [sic] contract' or 'a binding contract of sale and purchase.' * * * " *Id.* at 558-559, 19 O.O. 2d at 378, 182 N.E. 2d at 53.

"If the * * * broker, by himself, or through his agents, had the parties enter into a written contract, there was an obligation upon him, the broker, that such written contract be *enforcible* [sic], that it be a *binding* contract of sale and purchase. * * * " (Emphasis *sic.*) *Id.* at 560, 19 O.O. 2d at 379, 182 N.E. 2d at 54.

Thus, if a contract is unenforceable, the broker has not rendered any service to the seller and the broker cannot recover the commission. *Id.*

Ferguson Realtors cites *Carey* v. *Conn* (1923), 107 Ohio St. 113, 140 N.E. 643, and *Biggs* v. *Bernard* (1954), 98 Ohio App. 451, 58 O.O. 11, 130 N.E. 2d 152, to support its position that once the broker procures a ready, willing and able purchaser, the broker is entitled to the commission notwithstanding the fact that the contract is not subject to specific performance. In the *Carey* case, the broker filed an action to recover his commission. Prior to the broker's action, the vendor had sought specific performance of the purchase contract. Judgment, however, was rendered in favor of the purchaser. The Ohio Supreme Court held that the judgment of the specific performance action was not *res judicata* against the broker, the broker not being a party to that action. The Supreme Court also noted that the vendor's execution of the purchase contract constituted a waiver so far as the broker was concerned in regard to the purchaser being ready, willing and able to purchase. By executing the contract, the vendor had waived any questions concerning the prospective purchaser's financial responsibility. Whatever infirmities arose out of the contract subsequent to its execution could not prejudice the broker's rights to recover since he had fulfilled his obligation to "find a buyer." *Carey, supra,* is clearly distinguishable from the matter before us inasmuch as Butts never executed the contract.

In *Biggs* v. *Bernard, supra,* the de-

fendant-vendor's executor claimed that the broker was not entitled to his commission since the purchaser had failed to meet a condition precedent and the purchase contract was not enforceable. The appellate court did not find that the broker was entitled to a commission. Rather the court simply reversed a judgment on the pleadings granted to the vendor's executor, holding that such a judgment should not be granted where the plaintiffs' pleading impliedly alleged that the condition precedent had been fulfilled within a reasonable time and prior to the termination of the vendor's contract with the broker.

The *Carey* and *Biggs* cases both dealt with situations where the specific performance of the purchase contract was dependent upon either the vendor's or purchaser's fulfilling a certain condition. Clearly, the broker should not be denied his rightful commission where the parties have signed a purchase contract and the failure to complete the purchase is attributable to one of the principals to the purchase. Such is not the situation in the case at bar. As drafted, the purchase contract provided for Butts to retain an easement over the front lot. The county subdivision regulations, however, required that such interest be held in fee simple. A panhandle could not be granted to Butts since it would have exceeded the maximum length permitted under the regulations. The only alternative to a landlocked parcel was to obtain a variance from the planning commission. A variance had not been obtained nor did it appear that such would be granted. Thus, the Schmidts' ability to perform and convey the easement provided for in the contract was totally dependent upon the consent or approval of the planning commission.

Where a party's performance in a purchase contract depends upon the consent or approval of one not a party to the contract, who is free to withhold such consent or approval, specific performance cannot be decreed where it does not appear that the necessary consent or approval has been or can be obtained. Under such circumstances, the contract is unenforceable and the broker has not rendered any service to the vendor which would entitle the broker to recover a commission. See *Martineau* v. *Gresser, supra.* Accordingly, we find that the trial court correctly granted judgment to Butts. The first assignment of error is therefore overruled.

The assignments of error properly before this court having been ruled upon as heretofore set forth, it is the order of this court that the judgment or final order herein appealed from be, and the same hereby is, affirmed.

*Judgment affirmed.*

JONES, P.J., KOEHLER and YOUNG, JJ., concur.