LENTZ, d.b.a. Lentz Realty Company, Appellee,

v.

SCHNIPPEL et al., Appellants.

[Cite as *Lentz v. Schnippel* (1991), 71 Ohio App.3d 206.]

Court of Appeals of Ohio,
Shelby County.

No. 17–89–16.

Decided Feb. 26, 1991.

*Rodney Blake,* for appellee.

*R.C. Wiesenmayer*, for appellants.

HADLEY, Judge.

This is an appeal by the defendants-appellants, Gene and Betty Schnippel ("Schnippels"), from a bench trial and judgment rendered by the Shelby County Court of Common Pleas.

In the case *sub judice*, the plaintiff-appellee, Lentz Realty Co. ("Lentz Realty"), brought an action to recover a real estate commission from the Schnippels. The commission claimed was for procuring a willing buyer of real estate consisting of an eight-unit apartment building which had been converted into condominiums in October 1985. Seven of the eight units were owned by Be & Ge Development Company, a partnership with the Schnippels as its only partners. The eighth unit was owned by P. Stephens, Inc., whose sole stockholder was Patty Stephens, daughter of the Schnippels.

The two parties first contacted each other sometime in January 1988 when Gene Schnippel ("Gene") spoke with Jeff Lentz ("Jeff"), an agent of Lentz Realty, about selling the property. In June 1988, Jeff took Dennis and Randy Greve ("Greves"), potential buyers interested in rental property, on an inspection of the building.

After inspecting the property, the Greves were ready to make an offer but only on the condition that the property be converted back to apartments from condominiums. It is disputed by the parties whether this condition was ever conveyed by Jeff to Gene. Nevertheless, an offer to purchase for the price requested was made by the Greves. The offer was rejected by the Schnippels on the basis of the financing terms contained therein.

On December 27, 1988, a second offer was made by the Greves. This too was rejected by the Schnippels due to the financing terms.

The next day, the Greves made their third offer which has since become the focus of this dispute. The third offer was reduced to writing using a pre-printed form, titled "OFFER TO PURCHASE REAL ESTATE." In the places provided within the form, the property was described as apartments (not condominiums), and contained the offer price of $175,000. The terms of the offer stated that the Greves were to make a $15,000 down payment with the balance being financed by the Schnippels via land contract at ten percent per annum over 25 years. In the left margin an additional handwritten clause was added that the agreement was "subject to attorney review." The offer sheet was then signed by the Greves.

The contract was then taken to the Schnippels. They verbally accepted the terms of the contract but requested that they be given the opportunity to

consult with their attorney and their daughter Patty Stephens. The next day the Schnippels went to Lentz Realty and signed the contract, and again indicated that the terms set forth in the contract were acceptable to them. Directly above the line for the Schnippel's signature was the clause: "The undersigned hereby accepts the above offer and agrees to pay said agents _____% commission for services heretofore rendered." In the space provided for a percentage, a figure of $10,000 was written in by hand. It is uncontroverted that the Schnippels and Harry Lentz, owner of Lentz Realty, had agreed to modify the commission from six percent of the purchase price downward to $10,000.

On January 6, 1989, eight days after the Schnippels signed the contract, the Greves were informed by their attorney that the transaction would not be consummated. The Greves' attorney had learned, subsequent to the signing of the contract, that P. Stephens, Inc. held an option to purchase seven of the eight condominium units, and that the corporation would not relinquish the option. There was testimony given that the cause of the non-performance of the contract was the failure of the Schnippels to secure a release from their daughter, although the trial judge did not find this fact dispositive of the case. The trial judge did, however, find that the Greves were still prepared to purchase the property on the terms contained in the third offer.

As a result, on August 16, 1989, the trial court held that the Schnippels and Lentz Realty had entered into an oral listing contract with the only terms being the price, the commission, and that Lentz Realty find a ready, willing and able buyer. The court then found Lentz Realty was entitled to a real estate commission of $10,000 because it fulfilled the requirements of the listing contract by finding a buyer willing to purchase on the Schnippels' terms.

■ The Schnippels appeal stating three assignments of error. The first assignment of error states:

"The trial court committed reversible error by finding that Harry Lentz was a licensed real estate broker during 1988 doing business as Lentz Realty."

In order for Lentz Realty to recover its commission, it must comply with the requirements of R.C. 4735.21, which states:

"No right of action shall accrue to any person, partnership, association, or corporation for the collection of compensation for the performance of the acts mentioned in section 4735.01 of the Revised Code, without alleging and proving that such person, partnership, association or corporation was licensed as a real estate broker * * *."

In meeting their burden of proof at trial, Lentz Realty offered two pieces of evidence: Exhibit A, a photocopy of Harry Lentz's real estate license; and Exhibit B, a 1988 certificate of continuation, both issued by the state of Ohio. These exhibits were entered into evidence by stipulation at trial.

In essence, the Schnippels assert on appeal that no evidence was offered by Lentz Realty that its real estate license was filed with the Clerk of the Court of Putnam County, as required by R.C. 4735.16. We do not agree.

In pertinent part, R.C. 4735.16(C) states:

"Every real estate broker licensed under this chapter, within forty-five days of the receipt of his license and those of his salesman, shall register the licenses in the office of the clerk of courts of the county in which the real estate broker maintains his principal place of business * * *. Every license not registered in accordance with this section is invalid."

The Schnippels offer no authority on the requirement that proof of filing with the clerk of the court is needed to prove a valid license. Without reaching a decision on this, we note that a reading of R.C. 4735.21 together with R.C. 4735.16(C) does not clearly reveal that such proof is required. Instead, we will examine the effect of the Schnippels' stipulation to Lentz . Realty's offer of proof.

The Schnippels clarify their first assignment of error with regard to the effect of the stipulation by stating in their appellate brief: "Defendants for convenience of trial purposes, stipulated as to the authenticity of 'Exhibit A' and 'Exhibit B', but never admitted that Plaintiff had a valid license pursuant to [R.C. 4735.16]." The distinction between stipulations of "authenticity" of an exhibit but not to its "validity" is a tenuous one at best. Stated another way, the Schnippels are making the assertion that their stipulations to Exhibits A and B were only to the extent of the exhibits' physical properties and not for the intangible right that they represented. This argument is unfounded and misleading.

Thus, the photocopy of the "License to Engage in Real Estate Business" with the name Harry Lentz printed on it was sufficient evidence of Lentz Realty's right to sell real estate because the Schnippels so stipulated at trial. The Schnippels cannot now qualify that stipulation on appeal.

This court is also guided in its decision by the holding of *Whitney v. Bishop* (App.1938), 31 Ohio Law Abs. 143. In that case the defendant appealed from a bench trial judgment on the basis that plaintiff had not established that he was a licensed broker at the time of the transaction. The court rejected that argument, stating:

"[W]here the case is submitted to the trial court without a jury and the trial court's attention is not called to that subject either in the submission of the case or the motion for new trial; and where the motion for a new trial does not mention the subject or raise the question otherwise than by the claim that the court committed error by not rendering judgment for the defendant, the finding of the trial court that the plaintiff was licensed under said act at the time the cause of action arose is not manifestly against the weight of the evidence."

The court reasoned that no prejudicial error occurred because:

"No claim is made that the plaintiff was not, as a matter of fact, licensed under said act, *but only that he did not allege and prove that fact; and such claim is made for the first time in the reviewing court.*" (Emphasis added.)

After reviewing the entire record, we find that the holding of *Whitney v. Bishop, supra,* is persuasive. The Schnippels not only failed to call the trial court's attention to the license validity issue at trial, they also stipulated to proof of the license.

The first assignment of error is not well taken.

The Schnippels' second and third assignments of error are considered together. They state:

"The court's finding that the only terms of the listing agreement were that Jeffery Lentz, on behalf of Lentz Realty, was to procure for the Schnippels a purchaser ready, willing and able to purchase the real estate for the sum of $175,000.00 is against the manifest weight of the evidence and must be reversed.

"The trial court's finding that plaintiff fulfilled its part of the bargain, that being procuring a ready, willing and able purchaser on terms acceptable to the Schnippels, is against the manifest weight of the evidence and the judgment must be reversed."

Before disposing of the assignments of error, we must first address the issue of whether or not Lentz Realty is entitled to recover a commission under Ohio law in light of the fact that the transaction was never completed.

If a broker procures a buyer who is ready, willing and able to consummate the real estate transaction on seller's specified terms, and seller refuses to let the purchaser sign the sales contract, seller is bound to pay the broker's commission. *Scott v. Cravaack* (1977), 53 Ohio App.2d 248, 7 O.O.3d 302, 372 N.E.2d 1375. The same is true if seller breaches the sales contract. *White v. Nemastil* (1985), 29 Ohio App.3d 1, 29 OBR 1, 503 N.E.2d 189. However, if a contract procured by the broker is unenforceable, the broker is

not entitled to a commission.  *Martineau v. Gresser* (C.P.1962), 88 Ohio Law Abs. 550, 19 O.O.2d 374, 182 N.E.2d 48.

Here, there are several facts that call into question the enforceability of the sales contract procured by Lentz Realty: The Schnippels, through Be & Ge Development, owned only seven of the eight units in the building being sold; the owner of the eighth unit, P. Stephens, Inc., was not a party to the sales contract; and the property consisted of condominiums rather than apartments, as the Greves had been led to believe.

The question of enforceability of a sales contract was the focus of *Ferguson Realtors v. Butts* (1987), 37 Ohio App.3d 30, 523 N.E.2d 534.  There, the court was faced with a case where the realtors sued for their commission after one of their brokers had produced a buyer willing to purchase on the seller's terms.  The court, in denying the realtors their commission, partially based its decision on the unenforceability of the sales contract.  The court determined the unenforceability of the contract stemmed from the fact the sale of the property, which involved division of an existing lot, would require the acquisition of a zoning variance.  Since this division would require the approval of one not a party to the sales contract, the court held the contract unenforceable.

Although the facts and holding of *Butts* are not directly on point, the decision does provide insight as to whether the enforceability of the contract procured by Lentz Realty is germane to the trial court's decision.  In its order entry the court stated:

"Regardless of the reason for the [Schnippels] not honoring the purchase contract, the Court finds that upon the execution of the purchase contract, [Lentz Realty] fulfilled its part of the bargain, that being procuring a ready, willing and able purchaser on terms acceptable to the Schnippels."

The trial court, in rendering its decision, relied upon *Carey v. Conn* (1923), 107 Ohio St. 113, 140 N.E. 643.  *Butts* provides a well reasoned explanation of *Carey v. Conn, supra,* stating:

"The Supreme Court * * * noted that the vendor's execution of the purchase contract constituted a waiver so far as the broker was concerned in regard to the purchaser being ready, willing and able to purchase.  By executing the contract, the vendor waived any questions concerning the prospective purchaser's financial responsibility.  *Whatever infirmities arose out of the contract subsequent to its execution could not prejudice the broker's right to recover since he had fulfilled his obligation to 'find a buyer.' "*  (Emphasis added.)  *Ferguson Realtors v. Butts, supra,* 37 Ohio App.3d at 34, 523 N.E.2d at 539.

The court in *Butts* went on to discuss another decision with similar circumstances, and in summary stated:

"[A] broker should not be denied his rightful commission where the parties have signed a purchase contract and the failure to complete the purchase is attributable to one of the principals to the purchase." *Id.* at 35, 523 N.E.2d at 539–540.

In the *Butts* case the court distinguished its decision from the holding of *Carey v. Conn, supra,* on the grounds that, in the *Butts* case, the contract was never signed by the parties. Here, as in *Carey,* the contract had been signed by both parties. Therefore, we find that the trial court's reliance on *Carey* and its holding was well placed. Ohio law would allow recovery of a commission by Lentz Realty because any discrepancies in the sales contract for which the broker would be held responsible were waived when the parties signed the contract, especially in light of the fact that both parties wanted the agreement subject to their attorney's review of the agreement.

■ We now will address the Schnippels' contention that the evidence introduced and the testimony given at trial did not support the findings of the trial court. When assessing assignments of error regarding the manifest weight of evidence, reviewing courts follow a presumption that the findings of a trier-of-fact were indeed correct. The reasons behind the presumption are well stated in *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 410, 461 N.E.2d 1273, 1276:

"The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony. The interplay between the presumption of correctness and the ability of an appellate court to reverse a trial court decision based on the manifest weight of the evidence was succinctly set forth in the holding of this court in *C.E. Morris Co. v. Foley Construction Co.* (1978), 54 Ohio St.2d 279 [8 O.O.3d 261, 376 N.E.2d 578]: 'Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence.' " See, also, *Marshall v. Gibson* (Apr. 17, 1984), Auglaize App. No. 2–82–13, unreported, 1984 WL 7968; *Logan Waste Control v. Systech Liquid Treatment Corp.* (Jan. 29, 1986), Logan App. No. 8–84–20, unreported, 1986 WL 1341.

We have reviewed both the transcript of the trial and the exhibits entered into evidence. Applying the test stated in *C.E. Morris Co. v. Foley Construction Co., supra,* we cannot say that the trial court's findings regarding the

terms of the listing contract and the fulfillment of those terms by Lentz Realty are so unsupported by evidence as to require reversal.

The second and third assignments of error are not well taken.

*Judgment affirmed.*

MILLER and EVANS, JJ., concur.

EDGAR L. MILLER, J., retired, of the Third Appellate District, sitting by assignment.