DECISION AND JUDGMENT ENTRY
This appeal comes to us from a summary judgment issued by the Lucas County Court of Common Pleas in a contract case concerning the payment of realtor fees. Because we conclude that the trial court correctly determined that there were no material facts in dispute and appellee was entitled to judgment as a matter of law, we affirm.
Appellee, Woodley Wavecrest Ltd. agreed to have appellant, Robert F. Lindsay Realty Co., seek a buyer for appellee's commercial real estate. The parties both understood that appellee's current tenant, St. Vincent's Medical Center, would have, pursuant to its lease, the right of first refusal to purchase the property. Appellant, through one of its agents, Don Helvey, procured an offer to purchase for $3,900,000 from an entity known as "L.L.C." Kathy Stryzinski, an attorney and potential partner with Don Helvey in "L.L.C.," signed the purchase agreement "on behalf of L.L.C. or other business entity to be formed." Appellee, via its managing member, Gary Kahn, counter offered by raising the sale price to $4,500.00 and requiring the purchaser to obtain financing within forty-five days of the acceptance. This counter offer was accepted and signed on December 7, 1999. On December 22, 1999, John Scott, another of appellee's agents, notified William Sutton, St. Vincent's Vice President of Support Services, of the offer, telling him that St. Vincent's had thirty days to exercise the right of first refusal "under the same terms and conditions."
On January 26, 2000, Sutton, on behalf of St. Vincent's, accepted the offer. On February 2, 2000, Kahn then responded by letter, confirming that the date of acceptance was January 26, 2000. Scott then reiterated that St. Vincent's had forty-five days to "satisfy your governance approval and financing contingencies. You have agreed to shorten the period for closing to within ten days after the contingency period. Neither party has retained the services of a real estate broker in this transaction." St. Vincent's accepted the terms of this offer and the sale was ultimately completed.
Appellant then demanded payment of its commission in the amount of $180,000 (four per cent of $4,500,000) from appellee. After appellee refused to pay, appellant filed suit. Both parties filed motions for summary judgment. The trial court ultimately granted summary judgment in favor of appellee and against appellant.
Appellant now appeals, setting forth the following sole assignment of error:
 "The Trial Court Erred In Granting Defendant's Motion For Summary Judgment And Denying Plaintiff's Motion For Summary Judgment On Its Complaint."
The standard of review of a grant or denial of summary judgment is the same for both a trial court and an appellate court. Lorain Natl. Bankv. Saratoga Apts. (1989), 61 Ohio App.3d 127, 129. Summary judgment will be granted if "the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of facts, if any, * * * show that there is no genuine issue as to any material fact" and, construing the evidence most strongly in favor of the non-moving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law." Civ.R. 56(C).
To interpret the terms of a written contract, "a court's primary objective is to ascertain and give effect to the intent of the parties, which can be found in the language that they chose to employ. FosterWheeler Enviresponse, Inc. v. Franklin Cty. Convention Facilities Auth. (1997), 78 Ohio St.3d 353, 361, 678 N.E.2d 519, 526. The interpretation of a written agreement is, in the first instance, a matter of law for the court. If it is clear and unambiguous, the court need not go beyond the plain language of the agreement to determine the rights and obligations of the parties. Aultman Hosp. Assn. v. Community Mut. Ins. Co. (1989),46 Ohio St.3d 51, 53, 544 N.E.2d 920, 923; Seringetti Constr. Co. v.Cincinnati (1988), 51 Ohio App.3d 1, 4-5, 553 N.E.2d 1371, 1375. It must give effect to the contract's express terms in determining the rights and obligations of the parties and cannot, in effect, create a new contract by finding an intent not expressed in the clear language used by the parties. Shifrin v. Forest City Ent., Inc. (1992), 64 Ohio St.3d 635,638, 597 N.E.2d 499, 501; Alexander v. Buckeye Pipe Line Co. (1978),53 Ohio St.2d 241, 246, 374 N.E.2d 146, 150." Harry S. Peterson Co. v.Detzel Constr. (March 13, 1998), Hamilton App. No. C-961125, unreported,
"A real estate broker may recover commissions for the sale of property only by reason of an express or implied contract." Ostendorf-Morris Co.v. Slyman (1982), 6 Ohio App.3d 46, 47. An implied contract exists when "a seller authorizes the broker to produce a buyer under circumstances which should reasonably cause the owner to believe he will be expected to compensate the broker for those services." Id.
A real estate broker is entitled to a commission if he "(1) produces a buyer or seller who is ready, willing and able to buy or sell on the principal's terms, and (2) the transaction, or the readiness to perform on the principal's terms, directly results from the broker's efforts, without a break in continuity." Green v. Mathew (Jun. 29, 1999), Allen App. No. 1-99-02, unreported, citing Legros v. Tarr (1989), 44 Ohio St.3d 1,6. A prospective purchaser is "able" to buy if he is able to command the necessary funds to complete the purchase within the time allowed by the offer. Laronge, Inc. v. Bender (May 19, 1977), Cuyahoga App. No. 35552, unreported. A person is not "ready, willing and able" to buy when he is dependent upon third parties who are in no way bound to furnish the funds to complete the purchase. Id., citing C.O. Frick Co. v. Baetzel (1942),71 Ohio App. 301 . Proof of ability to buy is established where the evidence shows that the purchaser has sufficient available assets or had arranged a loan by which he would have been able to consummate the deal on the date stipulated. Laronge, Inc. v. Bender, supra, citing Walton v.Hudson (1947), 82 Ohio App. 330. If a contract procured by the broker is unenforceable, the broker is not entitled to a commission. Lentz v.Schnippel (1991), 71 Ohio App.3d 206, 211-12.
In this case, appellant procured an offer to purchase which was signed by an individual on behalf of "L.L.C. or other business entity to be formed." The plain language of the contract included the contingency that L.L.C. obtain financing within forty-five days of the acceptance of the contract. On summary judgment, appellant failed to put forth any evidence that "L.L.C." was, in fact, a real entity or that it had obtained financing within the forty-five day time frame. While Don Helvey, in an affidavit, avers that "Kathy Stryzinski and I had the financial ability to complete the purchase of the property * * *," this is insufficient to establish that "L.L.C." (the official purchaser on the contract) had sufficient assets or financing to complete the purchase. In our view, appellant failed to provide evidence that the purchaser was ready, willing, and able to satisfy the express forty-five day contingency. Therefore, the contract between appellee and L.L.C., which included the four per cent commission clause, was unenforceable, and appellant was not entitled to any commission under that express contract.
Appellant also argues that it is still entitled to a commission because St. Vincent's agreed to purchase the property under most of the same terms as the contract with "L.L.C." The record reveals, however, that the negotiations between appellee and St. Vincent's were separate from any efforts expended by appellant. The correspondence between appellee and St. Vincent's specifically indicates that no real estate agent was involved in the negotiations. Furthermore, prior to appellant's involvement in finding a buyer, appellant knew of St. Vincent's right of first refusal. Nothing in the record shows that any agreement, either express or implied, existed for the payment of a commission for such a sale.
Therefore, we conclude that no material facts remain in dispute and appellee is entitled to judgment as a matter of law. Accordingly, appellant's sole assignment of error is not well-taken.
The judgment of the Lucas County Court of Common Pleas is affirmed. Court costs of this appeal are assessed to appellant.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
James R. Sherck, J., Richard W. Knepper, J., and Mark L. Pietrykowski, P.J., CONCUR.